## No. 12,674.

### ROYAL INDEMNITY COMPANY ET AL. *v.* INDUSTRIAL COMMISSION· ET AL.

(293 Pac. 342)

Decided October 6, 1930.   Rehearing denied November 24, 1930.

114

Mr. H. Berman, Mr. Fred N. Holland, for plaintiffs in error.

Mr. John S. Underwood, Attorney General, Mr. Arthur L. Olson, Assistant, for defendants in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

The Industrial Commission awarded workmen's compensation to Chester Bennett, which award was confirmed by the district court. A reversal is sought by Royal Indemnity Company, the insurance carrier, and American Beet Sugar Company, the employer.

That the claimant met with an accident while performing work in the regular course of his employment is conceded. To defeat the compensaiton award, two contentions are made: First, that the injury for which compensation was awarded was not the result of the accident; second, that a sufficient notice claiming compensation was not given within the time limited by statute.

1. Did the injury result from the accident? The commission found that it did, and the district court affirmed the finding. If such finding was supported by sufficient evidence, or by reasonable inferences drawn from the evidence, we cannot disturb the finding. *Hassell Iron Works Co. v. Industrial Commission,* 70 Colo. 386, 201 Pac. 894. It is said that there was such a lack of legal evidence to support the finding as to amount to no evi-

dence. If that is so, it follows, of course, that no compensation should have been awarded. *Industrial Commission v. Elkas,* 73 Colo. 475, 216 Pac. 521.

■ On October 7, 1927, while the claimant, in the course of his employment, was breaking rock, a piece of the rock flew up and struck him in the left eye, badly bruising the eye. The next day the claimant went to a doctor who was engaged for the occasion by the employer. This much appears in the written statement made by the employer. The claimant was off duty about eight days. He then worked one shift, after which he quit his employment on account of his injury. Up to the time he was discharged by the doctor (about October 20, 1927) he went to him every day and twice on Sundays. The doctor engaged by the employer sent the claimant, on October 13, to an eye specialist, who examined the eye. The specialist testified that the uninjured eye had normal vision, and that the injured eye was approximately 10 per cent normal. He would not say that the claimant was almost blind in the injured eye, but "it is very poor vision." Asked whether he knew what was the cause, he answered that he could not say positively, but from his examination it did not appear to have been caused by the accident, but appeared to be amblyopia ex anopsia, which means that probably the eye has lost vision through nonuse. Asked whether he would say that the accident "could have caused the blindness in the eye, or would cause it," he answered, "No, I wouldn't say for sure whether it did, one way or the other." The claimant testified that he never had any trouble with his eyes prior to the accident; that he never could see any difference between the right eye and the left; and that at the time of the hearing, May 22, 1928, he could not "see out of" his left eye. A doctor who made an examination one year after the accident testified that there was a loss of practical vision of the left eye; that he believed the condition to be permanent; that glasses did not improve the vision. All the witnesses agree that after the accident

the vision of the left eye was seriously defective. The only question raised was as to the cause. Several doctors expressed the opinion that the condition was not the result of the accident, but was congenital. But all except one testified long after the accident. One doctor, who made his examination in June, 1929, testified that he did not assume any conclusion as to the actual cause of the condition for the reason that after two years it would be impossible to state whether the condition was caused by the injury or existed previous to the injury; that it was possible that the claimant could have had this condition of the left eye previous to the injury. He was asked: "Is the condition you find this man's eye in such as to have been caused by accident?" He answered: "Yes, it could have been. I can only answer that by saying the slight place on the eye could have caused a condition on the back of the eye, not to have done it. I cannot give you a definite opinion on that." Another doctor said, in a report to the commission: "At my examination of claimant on May 28, 1928, I could not determine the cause of his blindness. While in my opinion the accident had to do with his visual loss, I cannot prove this statement."

Such evidence amply sustains the finding of the commission relative to the cause of the loss of vision of the left eye.

██ 2. There was received in evidence and considered by the commission a report made to the Denver and Rio Grande Railroad Company on January 12, 1912, by Dr. J. H. Black, its surgeon, whose duty it was to examine applicants for employment and make written reports to the company of their condition. It is said that such report was inadmissible. If there is evidence, exclusive of evidence erroneously admitted, sufficient to support an award, the award ordinarily will not be set aside. But our attention is called to the statement in the supplemental award of January 29, 1930, that, "The Commission, having reviewed the records and files herein, and particularly the evidence taken January 16, 1930," confirms the

award of July 20, 1928. The evidence of January 16 consisted of Dr. Black's report and the testimony relating thereto. But the same award was made on July 20, 1928, which was affirmed by the commission on review on August 4, 1928, and again affirmed in a supplemental award dated February 4, 1929—all before the introduction of the evidence concerning the report. However, as the question presented is important and the objection is urged with great earnestness and apparent confidence, we will consider the admissibility of the report. The report is of an examination of the claimant, Chester Bennett, who then was an applicant for employment as laborer. It is on a printed form prepared for use on such occasions. On the back are printed directions to examining surgeons as to their duty in making reports of examinations of applicants for employment. Under the heading "Acuteness of Vision" is the entry, "Right eye, V 20/. Left eye, V 20/." We infer from the evidence that this was intended to indicate that both eyes had normal vision. Under the heading "Color Sense" is the entry, "Eyes Normal." At the end of the report, just above his signature, the surgeon stated, "I have carefully examined the above named laborer and find that he does possess all the requirements of health, in body, mind, and special senses necessary for the position of laborer." The report is the original written report—"the regular examination report that is sent to the head office"—and is a part of the regular medical records of the railroad company. It was made in the ordinary course of the business of the railroad company and the doctor and in the regular performance of the doctor's duty; was made contemporaneously with the examination, by one having personal knowledge of the matter reported, and who had no motive to misrepresent the facts, but a strong motive to state them truly; and at the time of the hearing the doctor was dead. The requirements of the rule concerning the admissibility of this kind of evidence were met in the present case. The report was properly received in

118

evidence. *Nicholls v. Webb*, 8 Wheat. 326, 5 L. Ed. 628; *Wisconsin Steel Co. v. Maryland Steel Co.*, 203 Fed. 403, 121 C. C. A. 507, declaring that the Wisconsin statute admitting such evidence is merely "a statutory ratification of the general law"; *Lassone v. Boston & L. Railroad*, 66 N. H. 345, 24 Atl. 902; *Welsh v. Barrett*, 15 Mass. 380; 3 Wigmore, Ev. (2d Ed.) §1521 et seq.; 4 Chamberlayne, Ev. §2870, et seq.; 3 Jones, Ev. (2d Ed.) §§1155, 1158; 1 Elliott, Ev. §479 et seq.; 5 Ency. of Ev. p. 255 et seq. See also *Chaffee & Co. v. United States*, 18 Wall. 516, 21 L. Ed. 908, where the rule was recognized, though the evidence was held to be inadmissible for failure to meet one of the requirements of the rule.

The holding in *Manby v. Sweet Investment Co.*, 78 Colo. 371, 242 Pac. 51, does not require the rejection of the evidence. In that case, to prove that $20 had been paid on a promissory note, thereby avoiding the bar of the statute of limitations, the plaintiff's president testified that his son told him it had been paid. The court held that such evidence was hearsay and inadmissible, and that the death of the son did not make it admissible. The court was dealing with an oral declaration, and the opinion of the court was limited to oral declarations. The quotation from 22 C. J. 237, "In the United States the hearsay rule is generally held to exclude declarations made while the declarant was acting in the course of duty," has reference to oral declarations only. See 22 C. J. p. 237, §224 b. It has no application in the present case.

█ 3. It is said that the claimant was not entitled to compensation because he failed to give sufficient notice claiming compensation within six months after sustaining the injury. The commission held that the notice given within that time was sufficient.

Section 4458, C. L., as amended in 1923 (S. L., c. 201, pp. 744, 745), requiring notice claiming compensation to be given within six months after the injury, provides that, "This limitation shall not apply to any claimant to

whom compensation has been paid." The day after the accident the employer engaged a doctor to examine and treat the claimant's left eye, and for nearly two weeks the claimant received medical treatment at the expense of the employer. This constituted the receipt of compensation within the meaning of the statute, and dispensed with the necessity of giving notice within six months. *Industrial Commission v. Globe Indemnity Co.*, 74 Colo. 52, 218 Pac. 910. It is unnecessary, therefore, to pass upon the sufficiency of the notice that was given.

The judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD and MR. JUSTICE CAMP-BELL did not participate.

*On Application for Rehearing.*

MR. JUSTICE BUTLER.

Counsel for the plaintiffs in error express the fear that we have overlooked one of their principal arguments. Such is not the case. Upon due consideration, we concluded that it was unsound. They urge us to state our reasons for such conclusion, and, as the matter is of importance, we will do so.

The case of *Industrial Commission v. Globe Indemnity Co.*, 74 Colo. 52, 218 Pac. 910, cited in our opinion, was decided under the act of 1915 (S. L., c. 179). Section 62 of that act provided: "No claim to recover *compensation* under this act shall be maintained unless" the prescribed notice is given. If no such notice is given "and no payment of compensation has been made within one year * * * the right to compensation * * * shall be wholly barred." Section 84 of the act of 1919 (C. L. §4458), as amended in 1923 (S. L., pp. 744, 745), provides: "Notice of an injury, for which *compensation and benefits* are payable, shall be given * * *. The right to *compensation and benefits* * * * shall be barred unless" notice

is given. "This limitation shall not apply to any claimant to whom compensation has been paid."

It is said that by using the words "compensation and benefits," the Legislature intended to give the words different meanings; that, according to the legislative intent, the payment of money direct to the claimant is the payment of compensation, and the payment of medical and similar expenses is the payment of benefits; that in case of the payment of money direct to the claimant no notice is necessary, but that the payment of medical and similar expenses is not sufficient to dispense with notice.

A consideration of the legislation on the subject makes it evident that the Legislature did not intend that the word "benefits" should be given the restricted meaning contended for by counsel.

In the act of 1919 we find the following expressions: "Compensation or death benefits" (§54); "accrued and unpaid benefits up to the time of the death of such employe or claimant" (§57, as amended in 1923); "the unpaid and unaccrued portion of the permanent total disability benefit which the employe would have received had he lived" (§64-a); "the unpaid and unaccrued portion of the permanent partial disability benefit which the employe would have received had he lived" (§64-b); an allowance to an employe in addition to all other "compensation benefits provided herein" (§75); "compensation or benefits," "compensation benefits" (§86). Where an employe dies leaving no dependents, section 63 (a) provides that "compensation shall be limited to the expenses provided for medical, hospital and funeral of deceased together with such sums as may have accrued or been paid to deceased during his lifetime for disability." There are other sections containing expressions similar to some of those quoted above. In section 63 (a), supra, the Legislature shows an intent to treat the payment of medical, hospital and funeral expenses as the payment of compensation. The history of section 84 puts the matter

beyond question. Before its amendment, it provided as follows: "No claim to recover compensation under this act shall be maintained unless notice * * * shall be served upon the Commission * * * [provided, however, that if no payment of *compensation* has been made, *other than* medical, funeral, surgical, nursing, dental and hospital services, crutches, apparatus and supplies,] such notice or claim must be filed within one year * * * or the right to compensation therefor shall be wholly barred." This, in effect, is a legislative declaration that the payment of medical expenses, etc., is the payment of compensation within the meaning of the act. The act of 1923 (S. L., c. 201, pp. 744, 745), amending section 84 of the act of 1919, omits the words enclosed in brackets in the above quotation. It appears, therefore, that the law, as counsel for the plaintiffs in error contend that it should be, was given a four-year trial, and that the Legislature then (in 1923) deliberately rejected it and restored the law as announced in *Industrial Commission v. Globe Indemnity Co., supra.* Applying the law as stated in that case, we hold that the payment of medical expenses for the claimant in this case was the payment of compensation within the meaning of C. L. section 4458, as amended in 1923 (S. L. pp. 744, 745), and therefore that it was not necessary to give notice of the injury within six months.

The application for rehearing is denied.