146 P.2d 873

**ANDERSON v. CONTRACT TRUCKING CO., Inc., et al.**

**No. 4814.**

Supreme Court of New Mexico.

March 8, 1944.

Dailey & Rogers and Jethro S. Vaught, Jr., all of Albuquerque, for appellants.

Mechem & Hannett and Joseph L. Smith, all of Albuquerque, for appellee.

MABRY, Justice.

Amos Anderson, plaintiff-appellee, hereinafter to be referred to as plaintiff, sued for and recovered from defendants-appellants, hereinafter to be referred to as defendants (or employer, or insurer, as the

case might be), compensation in the statutory sum of $18 per week for one hundred and ten weeks for loss of an eye. The claim arose under the New Mexico Workmen's Compensation Act. N.M.S.A.1941, § 57-901 et seq. The facts as found by the court are as hereinafter set out.

The claimant (plaintiff), while employed by employer Contract Trucking Company, Inc., suffered an injury by accident arising out of and in the course of his employment on the 9th day of November, 1940, at Socorro, New Mexico; he was working as a truck driver hauling equipment from Socorro to Reserve, New Mexico, at which time his average weekly earnings were $36. The injury complained of, being an injury to his right eye, was not apparent and remained latent and undiscovered until December, 1942. The accident occurred in the presence of the employer's superintendent, or foreman; the employer's superintendent or foreman in charge of the work in connection with which such injury occurred had actual knowledge of the occurrence at the time and place of the accident and provided a doctor to attend the claimant immediately thereafter.

The claimant on or about the 1st day of April, 1941, realized that his eyesight, and particularly the sight in his right eye, was becoming weaker. However, he thought it was due to strain on his eyes by continual night driving, and also because of his advancing age, and on the 18th day of April, 1941, he went to an optometrist (and, not a doctor of medicine) in Albuquerque, New Mexico, for the purpose of obtaining glasses and was, on that date, examined by the said optometrist and fitted for glasses; said optometrist did not advise him there was any defect in his right eye which would have led him to believe his weakening eyesight was due to the accident, previously suffered. Such injury has caused permanent total loss of vision to the right eye, due to a piece of steel off a catpin striking the claimant's eyeball, this from the accident of November, 1940, heretofore referred to. Claimant returned to said optometrist for a check-up in April, 1942, and saw no other doctor after April, 1942, until he visited the Lovelace Clinic in December, 1942. The first claim for benefits under the Workmen's Compensation Act was made by claimant to insurer on January 13, 1943; and more than one year and thirty-one days had elapsed between the date of the accident and injury complained of, to-wit, November 9, 1940, and the date claimant filed suit in the above-entitled cause, to-wit, January 22, 1943. The claimant upon consulting and receiving treatment by the physician selected by the employer at the time of the accident was advised by the physician that the injury was trivial; and claimant labored under the belief that he had sustained no serious injury up to and until December 9, 1942, when he consulted an ophthalmologist and ascertained that said latent injury, which he had been led to believe had been trivial, had then resulted in the total loss of the vision of said eye.

Two points are raised and argued: (1) that the claim is barred under the Workmen's Compensation Act; and (2) that the attorneys' fees allowed plaintiff by the trial court are excessive. Was the claim barred?

Since we adopt the reasoning upon which the able trial judge based his findings and conclusions, we believe it would be appropriate to here set out the language found in the written opinion filed by him at the time he made and filed his findings and conclusions interpreting 1941 Comp. sec. 57-913. This opinion reads:

"The question presented by the demurrer to the evidence in this matter is one of first impression in the State of New Mexico, i. e. whether an injury which is latent and not compensable at the time of the accident, but develops over one year and sixty days from the date of the accident, is forever barred under Section 57-913 of the New Mexico Statutes Annotated, 1941 Compilation.

"There seem to be two fairly well defined lines of authority, contrary to a certain extent, but not essentially conflicting as the two lines part mostly upon the wording of the statutes.

"One line of authority, which is based mainly upon statutes providing, 'notice of such injury shall be given within ———— days from the occurrence thereof,' and 'claim shall be filed within ———— days of the occurrence of said injury', holds that this time does not start to run until there is knowledge of a compensable injury or until the injury becomes compensable.

"The other line of authority which is based mainly upon statutes providing, 'notice of said accident shall be given within ———— days of the date of said accident' and claim shall be filed 'within ———— days of said accident', hold that the time runs from the date of the accident and that the rule cannot be relaxed under any circumstances.

"It has been held under a statute providing, 'Notice must be given within 30 days after *happening of accident and* claim made within one year after occurrence of injury.' That the year for filing began to run from the time the injury became compensable.

"Our statute seems to be sort of an off brand including a little of all statutes and being very vague as to time for filing claim. Section 57-913, New Mexico Statutes Annotated, 1941 Compilation, provides:

" 'Any workman claiming * * * under this act * * * shall give notice in writing of such accident *and of such injury* * * * within thirty (30) days after the *occurrence thereof,* unless prevented by such injury or other causes beyond his control * * * and at all events not later than sixty (60) days after such accident.'

"This provision is patently at odds when considering either of the above mentioned lines of authority. But, conceding for the moment that, whether the injury is

latent or not, the notice under any circumstances must be given within 60 days I do not see that this provision particularly effects this case for the testimony, which the demurrer admits the truth of, I believe establishes actual knowledge. If the defendant had notice and giving of notice was dispensed with under the statute, we then come to the question of when the claim must be filed.

"The Statute provides:

" 'In [the] event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled under the terms hereof, such workman shall be entitled to enforce the payment thereof by filing * * * filed not later than one (1) year after such refusal or failure of the employer so to pay the same.'

"The provision for filing claim contains no mention that the claim must be filed within a given time after the 'date of the accident,' or 'occurrence of the injury.' In line with numerous opinions, where there is a change of wording in the provision for time for giving notice and time for filing, it is significant that the legislature while seeking to be specific in the time for giving notice failed to so attempt to tie down the time for filing claims.

"The language, 'failure * * * to pay * * * any instalment of the compensation to which such workman may be entitled,' and starting the year to run from the date of such failure seems to me to indicate the intention of the legislature to allow considerable latitude in filing the claim. It is mere horse sense that the employee can't be entitled to compensation until the injury resulting from the accident becomes compensable, and when a latent injury becomes apparent it is only then that the workman is entitled to compensation and that there could be a refusal to pay which would start the year to operate.

"Even in states where the statute specifically provides the claim must be filed within *one year from the occurrence of the accident* there is now a trend to hold that the year does not begin to run until a disability has arisen resulting from the accident. Salt Lake City v. Industrial Comm. [93 Utah 510], 74 P.2d 657; Williams v. Industrial Comm. [95 Utah 376], 81 P.2d 649, which cases reverse a long line of decisions in Utah."

Plaintiff suggests that this became a case of first impression in this jurisdiction at the time of the trial below. But he urges that it is no longer such a case since the rendition of the opinion in Elsea v. Broome Furniture Co., Inc., 47 N.M. 356, 143 P.2d 572, 577, recently decided. In that case, in discussing the question of notice to the employer or insurer of results to flow from an injury, we said:

"Neither plaintiff nor Employer knew, of course, that epilepsy would result some five months after the injury alleged to have occurred February 12. Notice of the result to flow therefrom is excused where the

employee had no knowledge of the true seriousness and expert medical attention was necessary to establish causal relation. Hoage v. Employers' Liability Assur. Corp., 62 App.D.C. 77, 64 F.2d 715."

Plaintiff also relies upon the recent case of Salt Lake City v. Industrial Comm., 93 Utah 510, 74 P.2d 657, 658, wherein the Utah court reversed its previous position upon the question of whether the time of the accident or the discovery of the latent injury flowing therefrom would determine the question of limitation upon the right of the workman to file claim, said:

"This line of cases is based on the Utah Consolidated Mining Company Case [Utah Consolidated Mining Co. v. Industrial Comm., 57 Utah 279, 194 P. 657, 16 A.L.R. 458] which held that the applicant must file his application for compensation for disability within 1 year from the date of the accident. In this regard we think the opinion in that case and the cases which followed it were in error. Since it does not involve a rule of property on which rights were acquired and maintained, we think the error should at this time be rectified. We think Section 104—2—26, R.S.Utah 1933, which was at the time of decision of the Utah Consolidated Mining Company Case known as Section 6468, Comp.Laws Utah 1917, was applicable as a statute of limitation, but that it begins to run, not from the time of accident, but from the time of the employer's failure to pay compensation for disability when the disability can be ascertained and the duty to pay

compensation arises. Holding that the statute begins to run from the time of accident instead of from the time of compensable disability or loss, in effect *makes the statute begin to run before the cause of action accrues.* In negligence cases the cause of action arises from the negligence which causes the accident and therefore the statute begins to run from the time the negligence operated on plaintiff, which would be at the time of the accident. But no such rule applies in compensation cases. Compensation does not depend upon negligence." (Emphasis ours).

Counsel for defendants earnestly contend that what we said in the Elsea case, supra, and hereinbefore quoted, was not required to be said in order to determine the specific question with which we were dealing, viz., whether the statements and conduct of the employer or insurer could be said to have so misled the claimant as to have relieved him of the necessity of giving notice within the statutory time otherwise fixed by statute at 30 days after the occurrence of "such accident and of such injury." 1941 Comp.Sec. 57-913. Whether that case is, in fact, authority for plaintiff's position in the case at bar we need not and do not decide. We are prepared to say now, with the question squarely presented, that the trial court was correct in the interpretation which it gave the statute; that the limitation statute begins to operate, not from the date of the accident, unless the accident and injury must necessarily be treated as concurring incidents with no latent and undiscernible in-

jury present; but it begins to run "from the time of the employer's failure to pay compensation for disability when the disability can be ascertained and the duty to pay compensation arises." Salt Lake City v. Industrial Comm., supra.

Our attention is also called to the editor's note found in 108 A.L.R. at page 13 where the authority touching the question here under consideration is reviewed and where it appears that a number of states, including Arizona, Connecticut, Indiana, Maine, Missouri, Washington, Wisconsin, Wyoming, Nebraska and Texas, as well as some Federal courts, may be said to have sustained the position for which plaintiff contends, particularly if we appraise our statute as calling for the filing of the claim within a certain time after "injury", or after an "injury occurred", as we do.

The better reasoned cases, if not the weight of authority, support the view we here entertain that such a statute of limitation, as to a latent injury which was not, or could not with reasonable diligence, have been discovered until after one year and 31 days from the date of the accident would not bar the claim. To hold that the period of limitation starts running as of the date of the accident rather than as of the date upon which the injury culminates or becomes known as such would, in fact, in the language of the opinion in Salt Lake City v. Industrial Comm., supra, make "the statute begin to run before the cause of action accrues." See Seaman Body Corp. v. Industrial Comm., 209 Wis. 321,

245 N.W. 68; Bellet v. Niagara Frontier Food Terminal, 248 App.Div. 928, 290 N.Y.S. 263; Edge v. Dunean Mills et al., 202 S.C. 189, 24 S.E.2d 268; Cavanaugh v. Murphy Varnish Co., 130 N.J.L. 107, 31 A.2d 759; Reeves v. Fraser-Brace Engineering Co. et al., Mo.App., 172 S.W.2d 274; Johansen v. Union Stock Yards, 99 Neb. 328, 156 N.W. 511; Stolp v. Department of Labor & Industries, 138 Wash. 685, 245 P. 20; Texas Employers' Ins. Ass'n, v. Fricker, Tex.Civ.App., 16 S.W.2d 390.

It was held in Bonner v. Industrial Accident Commission, Cal.App., 140 P.2d 1000, that for limitation purposes silicosis is not an "injury" until the employee knows, or by due care and diligence is presumed to know, that he has an occupational disease which has progressed to the extent that he is so disabled that the efficiency of his work is appreciably affected thereby, and such injury may not arise until after the employment proximately causing it has ceased.

But, say defendants, even should this court apply the rule that the statute starts running from the date the injury becomes apparent as one compensable, rather than from the date of the accident, still plaintiff could not recover. He knew, say defendants, at least as early as April 18, 1941, when he secured glasses from an optometrist, that his eyesight was somewhat impaired and therefore the claim should have been filed at least within a year and thirty-one days thereafter. We

are unable to agree to the soundness of this contention. It was not until plaintiff had consulted an eye specialist that he discovered that his eyesight was practically gone. Then, for the first time, the growing weakness of the eye was traced to the accident of Nov., 1940, which accident, plaintiff had been led to believe by the doctor who examined him at the time (the doctor of the employer, incidentally), could not have set in motion an effect leading to impairment of vision. We need not set out here in more detail than is shown in the trial court's findings the action of plaintiff prior to seeking the advice of the eye specialist in seeking to correct his failing vision. Plaintiff could well have attributed this growing eye weakness to natural causes and advancing age. We cannot say that there was not substantial evidence to support the trial court's finding that he did not know, or have reason to know, prior to the time the specialist had seen him that he had suffered this serious injury which would progress to total blindness.

Upon the question of whether the attorneys' fees allowed counsel for plaintiff by the trial court are excessive we hold that they are not to be so considered. In this connection reference is made to the recent case of Elsea v. Broome Furniture Co., supra. The attorneys' fees allowed in the case at bar were $500, and it is clear that considerable work and time were devoted to the preparation and trial of the case. Under the rule by which we are governed and which was reiterated in the Elsea case, supra, the discretion of the trial judge in making the allowance will not be disturbed.

Finding no error the judgment is affirmed, and it is so ordered.

SADLER, C. J., and BRICE and THREET, JJ., concur.

BICKLEY, Justice (concurring).

I concur, but inasmuch as appellants earnestly contend the giving of notice of the accident and of the injury is a condition precedent to the right of recovery and assert that we have held, insofar as the limitation of time within which claim for compensation must be filed is concerned, the injury must have been considered as contemporaneous in point of time with the occurrence of the accident from which the injury is sutained, I think something further should be said.

Appellants are mistaken in their appraisal of our decisions.

The word "injury" is a term of broad signification and as applied to the human body may mean only some violence to or change in the physical structure, or in some part of the system.

It is understood in common speech to have this meaning (although not exclusively so) and so understood may refer to non-compensable injuries for workmen's compensation purposes.

As injuries are frequently evidenced by outward manifestations, I think for the

purpose of the notice part of the Act, which makes knowledge of the employers an equivalent of notice, the "injury" of which notice must be given may be either non-compensable or compensable, it being a chief purpose of notice to reasonably inform the employer so that he may have an opportunity to examine into the alleged accident and injury while the facts are accessible and also to employ skilled physicians or surgeons to care for the employee so as to speed his recovery and minimize the loss. Henderson v. Consumers Power Co., 301 Mich. 564, 4 N.W.2d 10.

The distinction between non-compensable and compensable accidental injuries in the administration of Workmen's Compensation Acts is noticed in Henderson v. Consumers Power Co., supra. Also it is noted that in Sec. 57-926, New Mexico Stats. 1941, it is made the duty of employers to report *all* accidents occurring in employments under the Act to the insurance department of the State Corporation Commission, whereas Sec. 57-927 requires the employer to report *"compensable accidental injuries"* to the Labor Commissioner; and Sec. 57-928 provides:

"No claim for compensation * * * shall be barred prior to the filing of such report or within thirty (30) days thereafter."

This seems to support the view that the limitations of actions bar applies to only compensable accidental injuries and that for *compensation purposes,* and for limitation of action purposes, the word "injuries" refers to compensable injuries only.

The limitation period begins with the date the employer shall fail or refuse to pay the compensation provided for in the act. .

Failure or refusal to pay compensation for non-compensable injuries would surely be an anomalous definition of the word.

Doubtless one of the purposes of notice in cases of compensable injury is to give the employer an opportunity to pay, without the added burden of court costs. It would seem absurd to fix the time the limitation period begins to run as of the date of the failure or refusal of the employer to pay something not required by the statute to be paid.

Since the court seems to have found in connection with notice that the defendant employer had actual knowledge of the accident and the injury, I understand the word "injury" to have been used by the court in the sense of non-compensable injury.

Appellants have cited in support of their contention decisions of this court in Caton v. Gilliland Oil Co., 33 N.M. 227, 264 P. 946; Mumford v. State Highway Commission, 35 N.M. 404, 1 P.2d 115; Taylor v. American Employers' Ins. Co. of Boston, Mass., 35 N.M. 544, 3 P.2d 76; Edinburg v. Southwestern Public Service Co., 37 N.M. 139, 19 P.2d 747; Bearup v. Peru Mining Co., 38 N.M. 531, 37 P.2d 535; Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302; Samora v. Town of Las Cruces, 45 N.M. 75, 109 P.2d 790.

The reported opinions in these cases did not set out fully the nature of the injuries or make reference to the time when the injuries became manifestly compensable, since the precise point involved in the case at bar was not involved in those cases. I have presently examined the record in those cases and it may be safely said that in all of them the facts were sufficient to indicate compensable injury at or near the date of the accident of which the employer either had notice or knowledge sufficient to invoke payment of compensation and thus start the running of the limitation period.

A notable illustration is the Mumford case, supra, in which it was apparent from the time of the accident that the injury was compensable. The claim alleged: "Such injury has caused the complete loss of the sight of the left eye caused by the splashing of hot creosote, * * *".

The answer of the insurer stated: " * * * admits the allegations in said claim", but denied liability for the reason, "that said employer had actual knowledge of said injury within two weeks after the occurrence thereof and no compensation nor any part thereof was paid by said employer or this defendant within thirty-one days after the date of the said accident and injury."

Thus, the defendant in that case, with keen discrimination, fixed the time of the failure or refusal to pay as the starting point of the limitation period for the purpose of its plea that the claim was barred.

In the case at bar the situation is quite different. The defendants here state that the claim is barred because not filed within one year after the occurrence of the accident and injury or after the refusal or failure of the employer to pay the same. Yet they create no situation by the evidence to show they had knowledge of a compensable injury from which a refusal or failure to pay could be inferred. In fact, the only evidence on the subject shows that the defendants disclaim having knowledge of a compensable injury, although the employer knew of the accident and of the injury, in the sense of physical harm and disturbance of the eye. But they regarded the injury as a trivial one and hence noncompensable.