274 P.2d 625

**H. F. SPIEKER, Plaintiff-Appellee,**

v.

**SKELLY OIL COMPANY, Defendant-Appellant.**

**No. 5786.**

Supreme Court of New Mexico.

Sept. 16, 1954.

Rehearing Denied Oct. 13, 1954.

Neal & Girand, Hobbs, William R. Horkey, Tulsa, Okl., for appellant.

William J. Heck, Hobbs, Robert W. Ward, Lovington, for appellee.

SEYMOUR, Justice.

Appellee Spieker, on April 15, 1953, filed his claim under the Workmen's Compensation Act against appellant, Skelly Oil Company, seeking compensation for injuries sustained by appellee January 13, 1953 while employed by the company as a roustabout in the oil fields. Claim was for total and permanent disability, attorney's fee, medical expenses and hospitalization. Appellant's answer admitted the accident, denied the disability and, by way of affirmative defense, alleged that appellee's action was prematurely filed for the reason that, at the time appellee instituted the action, appellant was not in default in any payments due under the compensation act. Further in affirmative defense, appellant alleged payment or tender to appellee of all compensation to which he was entitled and that appellant had no notice or knowledge of the accidental injuries alleged by appellee.

At the commencement of trial, appellant moved for dismissal of the claim on the ground of premature filing, which motion was overruled, and appellant made similar motions for judgment at the close of claimant's case and at the close of the entire case, which were also denied.

The jury returned a verdict for claimant, finding his then disability, resulting from the alleged accident, at 50%. The judgment pursuant to verdict, in addition to allowing attorney's fee and costs, reads in part as follows:

"It is, therefore, ordered, adjudged and decreed by the Court that the plaintiff do have and recover of and from the defendant, compensation at the rate of $15.00 per week *from April 13, 1953* during the period of the plaintiff's disability not exceeding 549⅜ths weeks, * * *" (Emphasis added).

The facts of the case significant to this appeal are as follows: After appellee's injury on January 13, 1953, he was paid compensation at the rate of $30 per week from January 22, 1953 to January 25, 1953 in the amount of $17.14. On January 26, he returned to his usual duties with the company and remained in its employment on the same job previously held until the 13th day of April, at which time he was discharged. He was carried on the payroll until April 15th, the day on which suit was filed.

Claimant-appellee was present and testified at the trial of this cause. The undisputed evidence reveals, among other things: Mr. Griffith, chief clerk of the Hobbs office of the appellant company, testified concerning appellee's return to work on January 26:

"Q. And when he returned to work, did he return on the basis that he had

recovered? A. Yes, he reported at the office and said that he was ready to go back to work, and I asked him if his injury was all right, and then he said that he was, that a chiropractor had cured him.

"Q. Did you ask him if Dr. Hodde (the company doctor) had released him? A. That is right.

"Q. Did he inform you? A. He informed me that Dr. Hodde had told him that he could go back to work at any time he felt like it." (Parentheses supplied.)

Claimant did not deny the foregoing, but he, himself, testified:

"Q. You didn't say any word about it to anybody working on the roustabout crew or to your supervisor or anybody—about your back hurting at that time? A. No, sir, I felt it wouldn't do me no good, and I figured they'd run me off, and they did anyhow.

"Q. But you didn't enter any complaints about your back? A. No.

"Q. You never opened your mouth to anybody in that crew, your supervisor or anybody? A. No sir.

"Q. From the date of January 26th, when you went back to work, until your services were terminated on the 15th—13th of April? A. That's right, sir."

And again:

"Q. Now, at any time between the 13th of April when you were discharged and the 15th of April when you filed this suit, did you tell anybody connected with the Company that your back was hurting? A. No, sir.

·  *     *     *     *     *     *

"Q. The first they had notice or any word was when this suit was filed, is that right? A. Yes, sir."

We will not speculate as to appellee's reason for advising appellant's chief clerk that he was cured when he returned to work or his reason for not disclosing injuries for almost three months while he continued in the employment of appellant at his regular work, drawing full wages. Appellee's stated reason appears in the above quoted testimony to the effect that he was afraid of being discharged. Appellant's witnesses, at least as to the discharge, testified that claimant was discharged because he could not handle the required written reports and, therefore, could never be advanced beyond the roustabout crew.

The only other facts bearing materially upon the question before us occurred on April 13, the day appellee was discharged. At that time, he advised Mr. Griffith, the chief clerk, that his back still hurt but, when Mr. Griffith offered to have him talk

to Mr. Dunlavey of the company concerning his back, he refused to do so.

Appellant's counsel, for the purpose of specifically reserving the point here raised for review, requested an instruction covering these particular facts, which instruction was given to the jury without objection:

"You are instructed that under the undisputed evidence in this case the defendant paid to claimant all of the benefits to which he was entitled under the Compensation Act of New Mexico by providing medical treatment and paying compensation to him until his return to work on January 26, 1953. The *defendant* (plaintiff) can only be entitled to compensation from April 13, 1953, in any event." (Parenthesis indicates typographical error.)

Appellant relies upon a single point for reversal; it is stated as follows:

"An action cannot be maintained under the Workmen's Compensation Act of the State of New Mexico against an employer until such time as the duty to make payments of compensation exists and the employer or his insurance carrier fails or refuses to make such payments."

At the time this appeal was briefed, there were only two New Mexico cases specifically dealing with this problem. Appellant relies upon George v. Miller & Smith, 1950, 54 N.M. 210, 219 P.2d 285, and appellee relies upon Hathaway v. New Mexico State Police, 1953, 57 N.M. 747, 263 P.2d 690. Since the filing of briefs herein, the Court has handed down its decision in State ex rel. Mountain States Mutual Casualty Co. v. Swope, 58 N.M. 553, 273 P.2d 750.

The trial court apparently joined appellee's counsel in the belief that the Hathaway case was controlling. With this view, we do not agree. That case held that the continued payment of claimant's salary as a gratuity, claimant being totally disabled and confined to his bed, performing no services, did not amount to the payment of compensation so as to suspend claimant's right to sue under the act. The factual situation in the instant case is so completely foreign to the facts of the Hathaway case as to destroy its applicability. In the instant case the wages paid, far from being a gratuity, were paid to appellee at his own request, for services rendered on his voluntary return to work asserting full recovery. Assuming the truth of appellee's statement on January 26, he was not then entitled to compensation and would not have been entitled to wages unless he worked for them. It is to this effect that the trial court instructed the jury in saying that appellee "can only be entitled to compensation from April 13, 1953, in any event." An opposite situation controlled the Hathaway case— there, the employee was entitled to compensation and could not possibly have performed services for wages.

George v. Milller & Smith, supra [54 N.M. 210, 219 P.2d 286], relied upon by appellant, comes very close to the instant case. In that case there was a gap in compensation payments while the claimant was working at his regular employment and being paid full wages. The only factual difference is that in the George case, the claimant was on compensation, came back to work and went off compensation, quit work and went back on compensation and, while being paid compensation during the last period, sued to determine the permanency of his disability and the amount and duration of the benefits. This Court said the suit was premature, Justice Lujan stating:

"Thus it will be seen that in order to confer jurisdiction in the district courts, the employer must have either failed or refused to make compensation payments to the injured workman as provided in the Act before he is entitled to file a claim. * * *"

Testing the instant case under the rule just stated and in the light of the trial court's instruction that plaintiff did not become entitled to compensation until April 13, 1953, we reach the conclusion that the instant suit is premature.

The rule of the George case has been carried forward in this Court's decision on an original proceedings for writ of prohibition against The Honorable Edwin L. Swope, District Judge, supra, in which case maximum compensation was paid to plaintiff through February 28 of this year, at which time an adjuster told the claimant that this check of February 28 was his last unless he settled on terms satisfactory to the insurance company. Suit was there filed on March 4, which filing this Court held to be premature. That case cites relevant portions of § 57–918, 1941 Comp., as amended, Laws 1951, ch. 205, § 1, and § 57–913, 1941 Comp., as amended, Laws 1947, ch. 173, § 1. Significant and additional parts thereof are:

§ 57–913:

"The compensation herein provided shall be paid by the employer to any injured workman entitled thereto in semi-monthly instalments as nearly equal as possible excepting the first instalment which shall be paid not later than thirty-one (31) days after the date of such injury. * * *"

§ 57–918:

"* * * But for any such injury for which compensation is payable under this act (Sections 57–901 through 57–931), the employer shall in all proper cases, as herein provided, pay to the injured workman or to some person authorized by the court to receive the same, for the use and benefit of the beneficiaries entitled thereto, compensation *at regular intervals or no more than sixteen (16) days apart,* in accordance with the following schedule, * * *." (Emphasis added.)

Returning to § 57–913, we find:

"* * * In event such employer shall fail or refuse to pay the compensation herein provided to such workman after having received such notice, or, without such notice when no notice is required, it shall be the duty of such workman, insisting upon the payment thereof, to file a claim therefor in the manner and within the time hereinafter provided. * * * In event of the failure or refusal of any employer to pay any workman entitled thereto any instalment of the compensation to which such workman may be entitled * * * to enforce the payment thereof by filing in the office of the clerk of the district court a claim * * *."

In disposing of the prohibition case, the opinion states [273 P.2d 751]:

"The record discloses that the compensation payment to which the claimant was last entitled, before suit, became due and payable on February 28, 1954, and that it was duly paid on that date. Therefore, the next regular compensation payment or instalment would not become due and payable, as provided by the act, until March 14, 1954; * * *. This particular instalment was not due and payable when the suit was instituted, consequently, the suit was premature."

In the prohibition case Justice Lujan cited, relied upon and reaffirmed the holding of the George case to the effect that, "in order to confer jurisdiction in the district courts, the employer must have either failed or refused to make compensation payments to the injured workman as provided in the Act before he is entitled to file a claim, * * *."

Turning to the instant case and the quoted instruction covering the peculiar facts here before us, we find that appellee was not entitled to compensation subsequent to January 26 up to April 13, from which date forward he became entitled to compensation. Under the portions of the statute above quoted, the next payment of compensation to which appellee became entitled was not due and payable by appellant until the end of the semi-monthly period specified in the act. Since that payment was not due and payable to appellee at the time suit was instituted, there could have been no "failure or refusal" on the part of appellant to pay it, and, under both the George case and the Swope case, the instant suit was premature. Consideration of the workmen's compensation act in its entirety clearly shows that the employer is entitled to have an opportunity to investigate the alleged disability of a claimant and exercise employer's best judgment concerning the right to compensation. Furthermore, it is apparent from the act that the duty to pay compensation ceases with the termination of the disability. In the instant case, appel-

lee was injured and the employer paid compensation. When appellee returned to work and asserted to appellant that he was "cured" and that the company doctor had released him for work, in the absence of any suspicious circumstances the employer was entitled to accept such statement and by it be released of its duty to continue compensation payments. So long as there was no duty on the part of employer to make compensation payments, there could be no refusal or failure to pay until such time as that duty again fell upon employer. It is quite possible on April 13, when appellee again mentioned to appellant's chief clerk some difficulty with his back, that the duty of employer to investigate was again created, and that a suit filed after the lapse of the semi-monthly interval would have been proper. This we need not decide, nor is it necessary here to determine the best or any exclusive method by which a claimant may assert his rights under such circumstances. In the instant case in which appellee was entitled to compensation only from April 13, a suit filed on the 15th day of April was premature and the court was without jurisdiction to hear the same. A contrary holding would destroy the statutory right of an employer to investigate claims and voluntarily accept his responsibilities under the act. The penalty for the employer's failure to accept his proper responsibilities has been the imposition upon him of all costs and attorneys' fees incurred by claimant if claimant is forced to invoke the aid of the courts.

A case not in point but enlightening in this connection is Anderson v. Contract Trucking Co., 1944, 48 N.M. 158, 146 P.2d 873, 875. That decision held that the statute of limitations was not a bar to a claim in respect to a latent injury. In that case, Justice Mabry stated:

"'* * * It is mere horse sense that the employee can't be entitled to compensation until the injury resulting from the accident becomes compensable, and when a latent injury becomes apparent it is only then that the workman is entitled to compensation and *that there could be a refusal* to pay which would start the year to operate.'" (Emphasis added.)

The parallel between a latent injury of the claimant tolling the statute of limitations until his injury becomes apparent to him, and the instant case in which the claimant through his own conduct has made it apparent to the employer that he has no compensable injury, is an exact one insofar as it applies to a failure or refusal to pay. Just as the statute of limitations was tolled in behalf of the claimant, so in the instant case is tolled the duty of the employer to pay. There was no failure or refusal to pay, because there was no duty in the in-

stant case at the time of the institution of suit.

The judgment of the trial court is reversed and the cause remanded with a direction to dismiss appellee's claim for compensation. In view of the hardship involved in this case, costs will not be assessed against appellee.

It is so ordered.

McGHEE, C. J., and SADLER and LUJAN, JJ., concur.

COMPTON, J., dissents.

COMPTON, Justice (dissenting).

The majority opinion forever bars recovery to an injured workman on technical grounds. In this instance, it shifts the burden from industry itself to the injured workman. Just where does the statute make provision for a second notice for the same injury? The purpose of notice, obviously, is to give the employer an opportunity to investigate the claimed injury and in this instance that was done and compensation paid for a time. What further purpose could a second notice serve?

The finding of the jury is amply sustained. When appellee was discharged, he had not fully recovered from the injury, the full extent of which could have been determined by the company at any time prior to discharging him, but it did nothing, electing to rely upon the bald statement of the injured workman as to his recovery. What workman supporting a family, as appellee was, would not forego compensation for wages?

The company had actual knowledge of the injury suffered by appellee, paid compensation therefor for a time, and also supplied his medical services. The payment of compensation under such circumstances, or wages in lieu thereof, was sufficient to invoke the continuing jurisdiction of the court until a final disposition of the case is made, and waives any further notice of the injury. Consequently, when the action was brought, appellant was in default and the action was not premature. Sinclair Prairie Oil Co. v. Smith, 168 Okl. 483, 34 P.2d 248; Oklahoma Natural Gas Corp. v. Craig, 193 Okl. 56, 139 P.2d 181, 141 P.2d 99; Colonial Insurance Co. v. Industrial Accident Commission, 60 Cal.App.2d 9, 140 P.2d 442; Gilson's Case, 254 Mass. 460, 150 N.E. 183; Continental Roll & Steel Foundry Co. v. Slocum, 111 Ind.App. 438, 41 N.E.2d 635; Royal Indemnity Co. v. Industrial Commission, 88 Colo. 113, 293 P. 342.

The majority having reached a different conclusion, I dissent.