291 P.2d 1102

Filiberto FRESQUEZ, Appellee,

v.

FARNSWORTH & CHAMBERS CO., Inc., Appellant.

No. 5947.

Supreme Court of New Mexico.

Dec. 29, 1955.

Gilbert, White & Gilbert, Santa Fe, for appellant.

Joseph M. Montoya, Edwin L. Felter, Claude S. Sena, Santa Fe, for appellee.

SADLER, Justice.

The question presented for decision is whether a suit for workmen's compensation filed September 12, 1952, by reason of an accidental injury suffered August 8, 1952, was filed prematurely.

While the extent and permanency of the plaintiff's disability were made issuable by the pleadings and litigated below, these questions are not before us on this appeal, having been settled in favor of the plaintiff by the findings of the trial court, leaving for consideration here only two questions, viz., (1) Is the suit premature and (2) Did the court err in making the attorneys fees allowed, to the extent of one-half their amount, payable in equal installments over the same period the plaintiff's compensation was made payable?

Whether the suit was premature depends upon the existence or not of default on defendant's part in the payment, seasonably, to plaintiff of the installments provided by law. If there had been a failure or refusal to pay the same, punctually, then suit was

timely and the question of error in the method chosen by the court for payment of a portion of the attorneys fees allowed must be determined. If there was no failure or refusal in the behalf indicated then there was no default. In that event, the suit is premature and, of course, no compensation and, hence, no attorneys fees, should have been allowed.

Touching the matters tried below but not here sought to be reviewed, counsel have this to say:

"Defendant does not agree with the Court below that plaintiff was disabled as a result of the accident, either by physical injury or the results of some mental disturbance, except for a period of a month or six weeks immediately after the accident. Defendant certainly does not concede a total permanent disability. But for the purpose of defendant's appeal and this Brief in Chief, we make no point of these disability questions."

The cause was tried before the court without a jury, following which findings of fact and conclusions of law, so far as material, were filed as follows:

"This matter having come on to be heard, and the Court having considered the evidence herein, Finds:

\* \* \* \* \* \*

"11. The accident complained of occurred on August 8, 1952; payments of compensation were made by the defendant insurer to the plaintiff as follows:

"Draft dated August 20, 1952 for $30.00, payable to the plaintiff, was cashed on or before August 26, 1952 as shown by defendant's Exhibit 1.

"Draft dated August 28, 1952 for $30.00, payable to the plaintiff, was cashed on or before September 10, 1952, as shown by defendant's Exhibit 2.

"Draft dated September 4, 1952 for $30.00, payable to the plaintiff, was cashed on or before September 10, 1952, as shown by defendant's exhibit 3.

"Draft dated September 17, 1952 for $90.00, payable to the plaintiff, was cashed on or before September 20, 1952, as shown by defendant's Exhibit 4.

"12. That the plaintiff's attorneys are entitled to compensation for representing the plaintiff in the trial of this cause, but that a part of such attorneys fees should be paid to such attorneys on the same basis as the plaintiff's compensation is paid, rather than in a lump sum.

"13. That the additional attorneys fees granted to plaintiff's attorneys should continue only for so long as the plaintiff's disability exists.

"From the foregoing Findings of

Fact, the Court concludes as matters of law:

"1. That plaintiff is entitled to have and recover judgment, of and from the defendant for compensation at the rate of Thirty Dollars ($30.00) per week for a period of 550 weeks, less such compensation payments as may have heretofore been paid, until, if and when such judgment and award may be modified pursuant to the provisions of the Workmen's Compensation Law. * * *."

We have already pointed out in the first paragraph of this opinion that suit was filed by claimant on September 12, 1952. It is the contention of defendant that under the trial court's findings, in conformity with undisputed facts, the plaintiff's suit was prematurely filed, there having been no failure or refusal to pay any installment of compensation, due and payable under the governing statute. The controlling statutory provisions, read as follows:

§ 59–10–13, N.M.S.A. 1953. The compensation herein provided shall be paid by the employer to any injured workman entitled thereto in semi-monthly instalments as nearly equal as possible excepting the first instalment which shall be paid not later than thirty-one (31) days after the date of such injury. * * *"

§ 59–10–18. N.M.S.A. 1953. "No compensation shall be due or payable under this act (§§ 57–901—57–931 [59–10–1 to 59–10–31]) for any injury which does not result in either the temporary disability of the workman lasting for more than seven (7) days or in his permanent disability or permanent injury, as herein described, or death; Provided, however, that if the period of temporary disability of the workman shall last for more than four (4) weeks from the date of the injury, then compensation under this act (§§ 57–901—57–931 [59–10–1 to 59–10–31]) shall be payable in addition to the amounts hereinafter stated in a like amount for the first seven (7) days after date of injury.

"But for any such injury for which compensation is payable under this act (§§ 57–901—57–931 [59–10–1 to 59–10–31]), the employer shall in all proper cases, as herein provided, pay to the injured workman or to some person authorized by the court to receive the same, for the use and benfit of the beneficiaries entitled thereto, compensation at regular intervals or no more than sixteen (16) days apart, in accordance with the following schedule, less proper deduction on account of default in failure to give notice of such injury as required in section. 57–913 (59–10–13) hereof; * * *."

§ 59–10–19, N.M.S.A. 1953. "No compensation shall be allowed for the first seven (7) days after injury is received except where such injury results in disability of the workman for more than four (4) weeks, then compensation shall be allowed from the date said injury occurred; * * *.

"Compensation for all classes of injuries shall run as follows:

"Surgical, medical and hospital services and medicines, as provided in this section. After the first seven (7) days, compensation during temporary disability lasting less than four (4) weeks from date of injury and provided that after four (4) weeks from date of injury if the workman continues to be temporarily disabled, then also for the first seven (7) days, until the injury has healed, and thereafter compensation as provided in this act (§§ 57–901 —57–931 [59–10–1 to 59–10–31]) as amended according to the condition of permanent total or permanent partial disability the workman has suffered as a result of the injury. * * *."

These sections of the governing law are relied upon by counsel for defendants in connection with three cases decided by this Court in the somewhat recent past. The cases mentioned are George v. Miller & Smith, Inc., 54 N.M. 210, 219 P.2d 285; State ex rel. Mountain States Mutual Casualty Co. v. Swope, 58 N.M. 553, 273 P.2d 750; Spieker v. Skelly Oil Co., 58 N.M. 674, 274 P.2d 625. Compare, Swallows v. City of Albuquerque, 59 N.M. 328, 284 P.2d 216.

 The authorities cited demonstrate beyond all question that a suit for compensation prematurely filed subjects the complaint, or claim as it is spoken of in the statute, to dismissal. We are quite unable to understand by what process of reasoning an employer can be deemed to have failed or refused to pay the statutory installment of compensation due by reason of a compensable injury occurring on August 8, 1952, warranting suit on September 12, 1952, if as the trial court found compensation payments had been made to and accepted by plaintiff by drafts, dated and cashed, as follows:

Draft dated August 20th, 1952, cashed on or before August 26th, 1952 ........................... $30.00

Draft dated August 28th, 1952, cashed on or before September 10th, 1952 ........................... $30.00

Draft dated September 4th, 1952, cashed on or before September 10th, 1952 ........................... $30.00

Draft dated September 17th, 1952, cashed on or before September 20th, 1952 ........................... $90.00

The governing statute, 1953 Comp. § 59–10–13, requires payment of compensation

in semi-monthly installments as nearly equal as possible excepting the first installment "which shall be paid not later than thirty-one (31) days after the date of such injury." It is provided in a later section of the same Act, § 59–10–19, that no compensation is allowable for the first seven (7) days after injury, except when the injury results in disability for more than four (4) weeks; also, by § 59–10–18, that no compensation shall be due or payable under the act for "any injury which does not result in either the temporary disability of the workman lasting for more than seven (7) days or in his permanent disability or permanent injury, as herein described, or death; * * *."

It seems too clear for dispute that on September 12, 1952, when this suit was filed the claimant was due and entitled to have received one semi-monthly installment of $60 for and on account of his injury, regardless of whether it should subsequently be determined as temporary or permanent and total or partial in character. Actually, he had received $90 when the suit was filed, two-thirds of which, or $60 had been received by claimant by August 28, 1952. Under the statute, the defendant employer would not be in default on the second installment of $60 until 16 days thereafter, or prior to September 13th, following. Suit was filed on September 12th, one day before maturity of the second installment.

In the meantime, however, one-half thereof, or $30 had been paid on September 4th. And on September 17th, five days after the filing of suit, the plaintiff accepted payment of another $30, by draft, making up total amount of the second installment of $60. Whether or not, payment by defendant of the September 17th draft for $30 and its collection by plaintiff would start the running of a new 16-day period from that date, we do not and need not determine.

The fact remains and stands out that with 31 days allowable within which to pay the first installment of $60 under the statute, $90 actually had been paid plaintiff, $60 whereof by the second draft, dated August 28, 1952, cashed by him on or before September 10, 1952, two days prior to suit. And it matters not whether the time within which maturity of the second installment be deemed to commence running be dated from August 28, 1952, or September 10, 1952, in either event the suit was prematurely filed—computing 16 days from either date.

Thus it is that whatever view we may take of the payments actually made and whether date of payments be deemed concurrent with date of the drafts by which made, or from date upon which such drafts were certainly paid over to the plaintiff, in all or either event, the plaintiff had actually been paid the first semi-monthly installment under the statute. That it thus was premature seems not open to dispute.

In George v. Miller & Smith, Inc., supra, dealing with another claim that the suit had been prematurely filed, we held [54 N.M. 210, 219 P.2d 286]:

"Thus it will be seen that in order to confer jurisdiction in the district courts, the employer must have either failed or refused to make compensation payments to the injured workman as provided in the Act before he is entitled to file a claim. Consequently, so long as the employer continues to make the maximum compensation payments to the injured workman he cannot properly institute a suit to fix the period of time or the amount to be paid therefor. We are of opinion, and so hold, that the court did not err in dismissing the plaintiff's claim.

"It is next contended that the trial court erred in denying the plaintiff a trial by jury on the issue of additional expenses incurred by him for psychiatric examination and treatment. * * *"

In State v. Swope, supra, after reviewing the facts, we quoted approvingly from George v. Miller & Smith, Inc., as follows [58 N.M. 553, 273 P.2d 752]:

"We held in the workmen's compensation case of George v. Miller & Smith, 54 N.M. 210, 219 P.2d 285, that in order to confer jurisdiction in the district courts, the employer must have either failed or refused to make compensation payments to the injured workman as provided in the act before he is entitled to file a claim, and we reaffirm that holding."

Again, in Spieker v. Skelly Oil Co., supra, dealing with a similar claim, we said [58 N.M. 674, 274 P.2d 629]:

"Consideration of the workmen's compensation act in its entirety clearly shows that the employer is entitled to have an opportunity to investigate the alleged disability of a claimant and exercise employer's best judgment concerning the right to compensation. Furthermore, it is apparent from the act that the duty to pay compensation ceased with the termination of the disability. In the instant case, appellee was injured and the employer paid compensation. When appellee returned to work and asserted to appellant that he was 'cured' and that the company doctor had released him for work, in the absence of any suspicious circumstances the employer was entitled to accept such statement and by it be released of its duty to continue compensation payments. So long as there was no duty on the part of employer to make compensation payments, there could be no refusal or failure to pay until such time as that duty again fell upon employer. * * * In the

instant case in which appellee was entitled to compensation only from April 13, a suit filed on the 15th day of April was premature and the court was without jurisdiction to hear the same. A contrary holding would destroy the statutory right of an employer to investigate claims and voluntarily accept his responsibilities under the act. The penalty for the employer's failure to accept his proper responsibilities has been the imposition upon him of all costs and attorneys' fees incurred by claimant if claimant is forced to invoke the aid of the courts."

The plaintiff's counsel seek to avoid the effect of the statute permitting payment of compensation installments, semi-monthly, at regular intervals, or no more than 16 days apart by injecting a claimed default as to first seven days' (one week's) compensation. They argue that at the first moment of the fifth week after the injury, four weeks' compensation had accrued, and was due and payable at or before midnight of the 31st day following the injury. In making this argument, as prelude to a claimed default, counsel overlook, or ignore, the fact that, although four weeks' compensation had accrued, the governing statute required that only two of them, at most, should have been paid by the end of the 31st day by reason of the 16-day statutes to be found in 1953 Comp. §§ 59–10–19 and 59–10–13.

Under no possible line of reasoning which takes into account and recognizes the statutory scheme of periodic payments "no more than 16 days apart," was defendant in default in its payments because at no point was there a period of more than 16 days beween drafts nor was there such a period between the last payment received and the date suit was filed. Counsel throughout, it seems to us, have failed to recognize and appreciate the field of statutory immunity from suit afforded the employer for investigation and determination of liability, provided he claims benefit of it by making and continuing payments of compensation in the meantime. To illustrate, the first week's compensation is payable at all solely in the event the disability, if temporary only, is of more than four weeks' duration, is permanent, or results in death. Liability for this first week's compensation is, at best, then, only provisional.

Thus it is that, irrespective of its status, if an employer commences payment of the semi-monthly installments periodically, not more than 16 days apart, the first of which shall be no later than 31 days after the injury, ultimate determination that there is liability for the first week's compensation may not be seized upon while the periodic 16-day installments are being regularly paid to precipitate a default and subject the employer to suit with all the added

incidents such as costs and substantial attorneys fees which, in many cases, might be avoided altogether if only the claimant would be patient, "yet a little while."

In other words, so long as the 16-day periodic installments are being paid, even though the contingent and suspensory first week's installment be unpaid, no refusal or failure to pay entitling the claimant to sue arises. Otherwise, it is but a trick calculated to entrap the unwary and subjecting the employer to liability for costs and heavy penalties by way of attorneys fees. Of course, no responsible or capable employer is going to risk subjection to a judgment for several thousand dollars in attorneys fees, or whatever sum the size of the judgment might warrant, over liability for one, the first, week's compensation.

It is a truism that "our hindsights are better than our foresights." The legislature in enacting this portion of the Workmen's Compensation Act seemingly took "time by the forelock" and wisely so, if the provisions be given a practical and sensible construction. But if it ever intended that the question of payment of the initial 7 days' compensation, left in a provisional state at the take off for installment payments, should be made the key proviso for instituting a suit for recovery of compensation and the attorneys fees, later interpolated into the act, it must say so in unmistakable language before we will give it that effect.

We should be remiss in our duty, if we closed this opinion without calling attention to the fact that this is the fourth case in the somewhat recent past in which we have been compelled to reverse a judgment, where the plaintiff either had recovered judgment for total or partial permanent disability, or was denied relief, by reason of the premature filing of suit to recover compensation. It is extremely unfortunate that claimants with just claims for compensation do not await with patience lapse of the statutory time allowed employers to investigate the merits of their claims before suing. More especially, is this true where throughout such period they are being paid compensation, in periodic installments, as provided by law.

The conclusion reached on the question of prematurity of suit leaves undetermined the claimed error presented on the award of attorneys fees. The trial court allowed plaintiff $2,000 attorneys fees, providing that one-half the amount thereof should be paid in the same manner as installments of compensation were paid. It was provided, however, that in the event the amount of compensation should be modified (reduced) at any time before the same was paid in full, the amount of attorneys fees should be modified accordingly.

Counsel for plaintiff suppose a case of three separate attorneys representing a claimant, contingently, of course, and receiving the same allowance as made herein for attorneys fees. Thus, each attorney would receive $666.66, one-half of which would be payable over a period of seven and one-half years, or $.79 per week for each attorney. We find no occasion to speak on this issue, no attorneys fees being recoverable under the conclusion we reach. We cannot withhold the gratuitous comment, however, that the controlling sections of the statute authorizing attorneys fees would have to compel such a construction as to payment, before we should feel disposed to adopt it.

It follows from what has been said that the judgment of the trial court must be reversed and the cause remanded with instructions to the trial court to set aside its judgment and to enter another one, dismissing the plaintiff's cause of action.

It is so ordered.

COMPTON, C. J., and LUJAN, McGHEE and KIKER, JJ.