290 P.2d 1072

George A. LETTEAU, Claimant, Plaintiff-Appellee,

v.

REYNOLDS ELECTRICAL AND ENGINEERING COMPANY, Employer,

Pacific Employers Insurance Company, Insurer, Defendants-Appellants.

No. 5955.

Supreme Court of New Mexico.

Dec. 3, 1955.

Simms & Modrall, Joseph E. Roehl, George T. Harris, Jr., A. T. Seymour, Albuquerque, for appellants.

Joseph L. Smith, Henry A. Kiker, Jr., Robert H. Sprecher, Albuquerque, for appellee.

McGHEE, Justice.

The defendant employer and insurer appeal from a judgment in favor of the plaintiff claimant under the Workmen's Compensation Act. It is the contention of appellants that the claimant failed to introduce any substantial evidence of a latent injury, and, therefore, that his claim for compensation for disability filed December 21, 1953, arising out of an accident which occurred on August 1, 1951, is barred by the statute of limitations contained in § 59–10–13, N.M.S.A.1953 Compilation; that the trial court erred in refusing to grant their timely motions for a directed verdict on such ground.

The claimant was employed as an electrician by the defendant employer at Los Alamos, New Mexico, on August 1, 1951. At that time the defendant, Pacific Employers Insurance Company, carried the employer's compensation insurance. This coverage expired under the policy on September 1, 1951, at which date coverage by another insurance company, Maryland Casualty Company, went into effect. A judgment in this cause in favor of the claimant against the employer and Maryland Casualty Company has been satisfied and is not of issue on this appeal.

On August 1, 1951, claimant was engaged in threading pipe in connection with installation of underground works. He was attempting to tighten a vise which was closed and opened by inserting an iron bar about a foot long through certain holes. Leverage to operate the vise was gained by turning the bar. The bar slipped and struck claimant's left knee, thus causing him to lose his balance and twist his leg at the same time.

Immediately after this accident claimant filled out an accident report and was sent to the Los Alamos Hospital by the work foreman. Claimant was seen by two doctors there, but was unable to identify one of them. However, the other, Dr. Oakes,

examined claimant, took x-rays, and advised claimant he had water on the knee and possibly a strain of the muscles. After giving claimant a bandage for the knee, Dr. Oakes told him to get a heat lamp and apply heat to the knee for relief of pain one or more times during the night. He said the water on the knee would dry up in time; that there was possibly a strain of the muscles and the knee would be sore where it had been hit; that claimant would get over it. Claimant saw this doctor a short time later in connection with this injury and was told by the doctor to return again if the knee bothered him.

The claimant did not return to Dr. Oakes until June 7, 1953. A written report made by Dr. Oakes to a claims service agent by letter of April 5, 1954, was introduced in evidence and contains this description of claimant's visits to him:

"On August 28th, 1951, he (claimant) was seen by me at which time I stated that he had a good tight knee with pain along the lateral ligaments. Impression was knee strain and an elastoplast strapping was applied and he was to return in one week. The elastoplast was removed September 4th, 1951, he was advised to use heat at home and to return to see us again in one week. He was not seen again until the 7th of June 1953 for this injury when he came into my office

stating that he was still having trouble with the left knee. Upon examination he was found to have a stable joint with pain over the medial cartilage produced by impingement of the medial collateral ligament. I felt that this was a torn medial cartilage and that it should be excised. * * *"

The claimant testified the knee was sore and painful during the year 1951 from the time of the accident; that it caused him trouble in 1952 and that off and on during that year he wore his bandage and would take heat treatments in the evening with his heat lamp; that the pain at times during 1952 and the early part of 1953 would get worse in wet weather and that it would depend on the type of work he was doing. According to his testimony the knee continued to give sporadic trouble with occasional stiffness or locking of the knee right up to June of 1953, when a second incident involving the knee occurred.

During June of 1953, while still working for the defendant employer, claimant had another accident. He was climbing a ladder and had gone up a couple of steps when his knee gave way or his foot slipped and he fell two or three feet off the ladder, again twisting the left knee. Another accident report was made out and in a short while claimant again went to see Dr. Oakes, who as noted in the report above, diagnosed the injury as a torn

medial cartilage and recommended an operation. Later claimant went to a doctor in Santa Fe, whose diagnosis was the same.

Claimant has continued with his work as an electrician and at the time of trial was employed by an Albuquerque electrical construction company doing estimating work, a job which is easier for him because of his knee than that of a supervising journeyman electrician, the work he formerly did.

When asked why he did not file a claim for compensation or seek further medical attention prior to June, 1953, claimant testified he relied on Dr. Oakes' statement that he had water on the knee and possible muscle strain and would get over it.

In support of the award it is argued by claimant that the cases of Anderson v. Contract Trucking Co., Inc., 1944, 48 N.M. 158, 146 P.2d 873, and Harlow v. Hare, 1947, 51 N.M. 326, 184 P.2d 300, establish the rule that where an erroneous medical diagnosis is given by a doctor to whom a claimant is sent by his employer, the claimant has a right to rely upon such erroneous diagnosis and that the erroneous diagnosis is what forms the basis for the finding of a latent injury. In order to get around our holding in Gonzales v. Coe, 1954, 59 N.M. 1, 277 P.2d 548, that a claimant who was continuously in pain from the time of injury until the time he made claim for workmen's compensation did not suffer a latent injury but was charged at the time of the accident with notice of his disability, claimant points out that in the Gonzales case the claimant never went to a doctor and there was, therefore, no erroneous diagnosis.

Claimant has misinterpreted our earlier holdings. In the Anderson case we held that a claim for compensation benefits was not barred in respect of a latent injury which was not or could not with reasonable diligence have been discovered until after one year and 31 days from the date of the accident.

The important thing is whether the injury was not or could not have been discovered with reasonable diligence. The early erroneous diagnosis in the Anderson and Harlow cases was simply one circumstance or factor, to be considered with all the others present, in ascertaining whether the injury to claimant could have been discovered by the exercise of reasonable diligence.

Claimant points to testimony of the medical experts to the effect that the second accident increased and revealed the symptoms of a torn cartilage, that the injury is one which is frequently diagnosed in the beginning as a sprain, and that true diagnosis cannot be made until the situation becomes worse with the passage of time.

238

■ But, we said in Gonzales v. Coe, supra, that the mere fact that a claimant, from a medical standpoint, does not know the full extent of his injury does not relieve him from timely filing his claim for workmen's compensation.

We think the following language from the case of Sanchez v. Bernalillo County, 1953, 57 N.M. 217, 257 P.2d 909, 912, points up the difference between the present case and the Anderson case, although it should be noted the Sanchez case made no direct ruling on the latent injury feature:

"This case differs from the one before us in that in the Anderson case the workman was led to believe that his injury was trivial and he attributed his growing eye weakness to natural causes and advancing age. Suit was filed within the statutory period after the discovery by him of the seriousness of his injury and the court held it to have been filed in time. In the instant case, it was evident that the workman appreciated the seriousness of his injuries as early as a few months after the occurrence of the accident but he took none of the steps required of him by the statute to acquaint his employer with the fact that he had sustained a compensable injury, * * *.

"* * * It will be remembered that the workman, Sanchez, sustained compensable injuries in 1946 from which he (it may be conceded) died in 1951, and that although he during these years continually complained about his declining health and increasing disability, with all of which he ever blamed the damage to his head sustained while working in the jail, he did nothing to claim or assert his right to compensation until two days before his death. * * *"

■ So it is in this case. Claimant knew that his knee was injured in the first accident. He must have known, as a reasonable person, that he had some disability, because after the accident and for twenty-two months he had sporadic pain in the knee which he treated with bandages and heat; his knee was weakened so that he developed a noticeable limp. Although when he last consulted Dr. Oakes in 1951 he was asked to return if the knee continued to bother him, he did not return until after the second accident.

We must agree with the appellants that the original accident and injury to claimant's knee were concurring incidents; that claimant suffered pain, discomfort and disability in his knee from the date of the original accident; and the claimant knew the causal connection between the accident and injury from the date of the original accident. We must, therefore, conclude there was nothing substantial in the evi-

dence to establish a latent injury and that the claim was barred under § 59–10–13, supra.

Our holding makes it unnecessary to notice other errors complained of by appellants. The cause is reversed and remanded with direction to the trial court to enter judgment dismissing plaintiff's claim. It is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

KIKER, J., not participating.