785 P.2d 285

**Edward DiMATTEO,
Plaintiff–Appellant,**

v.

**The COUNTY OF DONA ANA, state of New Mexico, By and Through its governing BOARD OF COUNTY COMMISSIONERS, Fireman's Fund Insurance Company, and Rockwood Insurance Company, Defendants–Appellees.**

**No. 10962.**

Court of Appeals of New Mexico.

Dec. 19, 1989.

Gordon Berman, Pickett & Holmes, Las Cruces, for plaintiff-appellant.

Larry Ramirez and Manuel I. Arrieta, Weinbrenner, Richards, Paulowsky & Sandenaw, P.A., Las Cruces, for defendant-appellee, Fireman's Fund Ins. Co.

Daniel G. Acosta, Campbell, Reeves, Chavez & Acosta, P.A., Las Cruces, for defendants-appellees.

Hal Stratton, Atty. Gen. and MaryAnn Lunderman, Sp. Asst. Atty. Gen., Albuquerque, for Gerald B. Stuyvesant, Director Workers' Compensation Div.

## OPINION

MINZNER, Judge.

Plaintiff appeals from the trial court's order denying his motion for increased

workers' compensation benefits. In a prior appeal, *see DiMatteo v. County of Dona Ana,* 104 N.M. 599, 725 P.2d 575 (Ct.App. 1985) (*DiMatteo I*), this court affirmed defendants' liability for medical benefits. In this case, plaintiff seeks benefits for total disability arising out of the accidents involved in *DiMatteo I.* We reverse.

## BACKGROUND

While employed as the Dona Ana County Sheriff, plaintiff was injured on February 22 and July 19, 1973, in June 1974, and on April 14, 1982. Plaintiff sought disability and medical benefits only after the April 1982 accident. During the 1983 trial, however, plaintiff orally withdrew his claim for disability benefits. After trial, plaintiff was awarded medical benefits, and defendant Rockwood Insurance Company (Rockwood) appealed.

Although this court affirmed defendants' liability for medical benefits, we limited plaintiff to recovery for only those medical bills introduced into evidence. *See DiMatteo I.* On April 9, 1987, plaintiff filed a supplemental complaint for workers' compensation benefits, claiming he became disabled on January 1, 1987, as a result of (a) the 1982 accident, (b) the 1973 and 1974 accidents, or (c) the combination of all these accidents. Defendants filed motions to dismiss the supplemental complaint. At the July 13, 1987 hearing on the motions, plaintiff's supplemental complaint was challenged as not being the appropriate method by which to bring his claim. Plaintiff agreed with defendants and the district court, and plaintiff was given an opportunity to file a motion for increase of benefits.

Plaintiff's motion to increase benefits alternatively alleges that plaintiff became disabled on either January 1, 1987, when the pain and discomfort forced him to quit his job, or some time after the April 1982 accidental injury. The motion reiterates that disability resulted from the 1973 and 1974 accidental injuries, the 1982 accidental injury, or both. After plaintiff filed his motion to increase, defendants filed motions to strike. Defendants filed motions to strike because they did not believe a motion to dismiss was the proper way to

have plaintiff's motion to increase his benefits dismissed. After a March 22, 1988 hearing on the motions, the district court granted defendants' motions and dismissed plaintiff's claim.

Two preliminary considerations in this case are jurisdiction and the standard of review. We first address the jurisdictional issue.

## JURISDICTION IN THE DISTRICT COURT

Chapter 22, Section 102 of the 1986 Laws repealed sections of the then-existing Workmen's Compensation Act that required filing of claims in the district court, court approval of pretrial settlements, application of the rules of civil procedure in compensation proceedings, and trial of cases in district court. *Wylie Corp. v. Mowrer,* 104 N.M. 751, 726 P.2d 1381 (1986). Section 103 provided that the Workmen's Compensation Administration (the Administration), the agency charged with administering the Interim Act, NMSA 1978, Sections 52–1–1 to –69 (Orig.Pamp. & Cum.Supp.1986), would begin operating on December 1, 1986. Section 101 provided that all claims filed after December 1, 1986 should be filed with the director of the Administration.

In 1987, the legislature created the Labor Department to administer all functions formerly administered and exercised by the Administration, the labor commissioner, and the office of the Human Rights Commission. 1987 N.M. Laws ch. 342, § 3. The legislature abolished the Administration, established the Division, and provided that the Division would have all of the powers and duties conferred upon the former Administration. 1987 N.M. Laws ch. 342, §§ 4, 5, 14(B)(2).

In this case, the parties viewed the claim as an attempt to reopen the prior award. No one raised the issue of the district court's jurisdiction after the 1986 amendments. We requested supplemental briefing, invited participation from the Workers' Compensation Division, and scheduled oral argument.

The jurisdictional issue is whether plaintiff's motion to increase benefits is a claim filed after December 1, 1986. If so, he should have filed his claim with the Workers' Compensation Division (the Division). *See Wylie Corp. v. Mowrer;* 1986 N.M. Laws ch. 22, §§ 101–03; 1987 N.M.Laws ch. 342, §§ 5, 14(B)(2). For the following reasons, we conclude that plaintiff's claim is not a claim filed after December 1, 1986, for purposes of deciding the proper forum, and that jurisdiction lies with the district court.

In all states, legislatures have made some kind of provision for reopening and modifying awards. *See generally* 3 A. Larson, *The Law of Workmen's Compensation* § 81.10 (1989). The purpose of such provisions is to permit a revision of the typical periodic payment award to correspond to a claimant's changed condition. *Id.* Because of the administrative and practical difficulties involved in recognizing unlimited jurisdiction to open cases, most states limit the period in which a case may be reopened. *See generally id.,* § 81.21 (some states set a fixed period running from the injury or from the award; others limit jurisdiction to the duration of the original award; others extend the period to a specified number of months or years after the last payment of compensation or the expiration of the award).

Under the Workmen's Compensation Act as it read prior to amendment in 1986, the district court retained jurisdiction to reopen its award for disability to meet changes in a claimant's condition. *See Martinez v. Earth Resources Co.,* 90 N.M. 590, 566 P.2d 838 (Ct.App.), *overruled on other grounds, Garza v. W.A. Jourdan, Inc.,* 91 N.M. 268, 572 P.2d 1276 (Ct.App.1977); *see also* § 52–1–56(A) (Orig.Pamp.) (amended effective December 1, 1986 by 1986 N.M. Laws ch. 22, §§ 19, 103). Under Section 52–1–56(A), there is no express time limit within which applications for an increase may be filed. *Id.* However, under the supreme court's decision in *Norvell v. Barnsdall Oil Co.,* 41 N.M. 421, 70 P.2d 150 (1937), an application may be presented at any time within the period for which compensation is allowable. Plaintiff's ap-plication appears to have been timely under Section 52–1–56(A). At the time of the 1982 accident, the maximum duration of benefits was 600 weeks. *See* § 52–1–47(A) (Orig.Pamp.) (amended effective June 19, 1987 by 1987 N.M.Laws ch. 235, § 20).

■ In this case, the dispositive question is whether the legislature intended to include applications to increase, decrease, or terminate benefits in the term "claim," when it provided that claims filed after December 1, 1986 were to be filed with the new administrative agency. For the following reasons, we conclude that the legislature intended to refer to claims filed for the first time after December 1, 1986.

Under the state constitution, "[n]o act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case." N.M. Const. art. IV, § 34. The term "pending case" ordinarily refers to a suit pending on some court's docket and does not include a suit filed after the statute became effective on a cause of action arising prior to enactment of the statute. *Gray v. Armijo,* 70 N.M. 245, 372 P.2d 821 (1962).

As our supreme court noted in *Stockard v. Hamilton,* 25 N.M. 240, 244–45, 180 P. 294, 295 (1919), "[t]he authorities as to what is a 'pending case' are by no means uniform, and are of no great aid to the court in determining the meaning of the language in question." The court noted that "[t]he definitions of a pending case vary with the construction of each particular statute" and held that the word "pending" should be interpreted as meaning " 'depending,' 'remaining undecided,' [and] 'not terminated.' " *Id.* at 245, 180 P. at 295. Thus, the court appeared to equate a "pending case" with a case that is in the process or course of litigation and which has not been concluded, finished, or determined by a final judgment.

■ In this case, plaintiff obtained a final judgment for purposes of appeal after the 1983 trial. *See DiMatteo I; see also Johnson v. C & H Constr. Co.,* 78 N.M. 423, 432 P.2d 267 (Ct.App.1967) (judgment

or order in compensation proceedings is not final unless all issues of law and of fact necessary to be determined are determined and the case completely disposed of so far as court has power to dispose of it). However, our supreme court cases suggest that a compensation award is not final for other purposes until the period has passed during which it may be increased, decreased, or terminated. *See Segura v. Jack Adams Gen. Contractor*, 64 N.M. 413, 329 P.2d 432 (1958); *Churchill v. City of Albuquerque*, 66 N.M. 325, 347 P.2d 752 (1959); *but compare Phelps v. Phelps*, 85 N.M. 62, 509 P.2d 254 (1973) (divorce decree with custody provisions not a "pending case"). Thus, we think it is unclear under the relevant statutes and cases whether a compensation award is a pending case within the meaning of the constitution as long as it remains subject to modification.

█ We doubt the legislature intended to raise a constitutional issue as to the jurisdiction of the new administrative agency. We assume, to the contrary, that the legislature intended to establish a "bright line" principle that would separate the work of the new agency from that of the district courts. The purpose of the new agency is to provide a system that assures "the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost, to the employers who are subject to" the new legislation. NMSA 1978, § 52-5-1 (Repl. Pamp.1987). Based on the supplemental briefs and the contentions advanced at oral argument, we are persuaded that the most reasonable "bright line" rule would exclude applications to increase, decrease, or terminate benefits from the term "claim," as that term is used in Section 101.

Under such a rule, a district court will be able to complete a case with which it is familiar. We think that result is more consistent with the legislative intent in establishing the new agency, because it reserves to the district courts cases they are more likely to be able to process expeditiously. This is certainly such a case.

We recognize that by distinguishing between wholly new claims and plaintiff's claim for increased compensation, we perpetuate for a longer period of time a dual system. Nevertheless, we believe the purpose of the new legislation is served best by construing the term "claim" so as to exclude applications to increase, decrease, or terminate benefits. Thus, we hold that the trial court did not lack jurisdiction over plaintiff's motion.

## STANDARD OF REVIEW

The dismissal of plaintiff's claim was prompted by a hearing on defendants' motions to strike. These motions, however, did not seek to strike an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from plaintiff's motion. *See* SCRA 1986, 1-012(F) (motion to strike). Rather, they sought dismissal of plaintiff's claim.

Generally, the entire complaint will not be stricken under Rule 1-012; only those matters improperly pleaded, or which have no bearing on the lawsuit, should be stricken by a motion to strike. *See Peoples v. Peoples*, 72 N.M. 64, 380 P.2d 513 (1963); *see generally* R. 1-012(F) (the district court may strike from the pleading). Since plaintiff's claim was dismissed in its entirety and not for any of the reasons in Rule 1-012, the motions to strike must be analyzed either as motions to dismiss or as motions for summary judgment.

The general rule is that where matters outside of the pleadings are considered, a motion to dismiss is treated as a motion for summary judgment. *See Transamerica Ins. Co. v. Sydow*, 97 N.M. 51, 636 P.2d 322 (Ct.App.1981). At the March 22 hearing, defendants submitted to the district court their earlier findings and conclusions in *DiMatteo I* and this court's opinion in *DiMatteo I*, and the parties and district court repeatedly referred to matters from the earlier proceedings. Although the affirmative defense of res judicata may be raised in a motion to dismiss, in this case defendants have relied on matters outside of plaintiff's motion in asserting the defense. Thus, even as to this defense, defendants in effect sought summary judgment. *Cf. Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467 (1986), *cert. denied sub*

*nom. Lyne v. Coxon,* 482 U.S. 905, 107 S.Ct. 2482, 96 L.Ed.2d 374 (1987) (motion to dismiss proper procedure where complaint clearly shows relief is barred by an affirmative defense).

Since the district court considered matters outside of the pleadings, we have treated defendants' motions as motions for summary judgment. *See Richardson Ford Sales v. Cummins,* 74 N.M. 271, 393 P.2d 11 (1964). The standard of review is whether defendants made a prima facie case that no genuine issue of material fact existed and, if so, whether plaintiff rebutted the prima facie case. *See Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972).

Resolving the summary judgment question on appeal is made difficult by the status of the evidentiary matters before the district court at the March 22 hearing. None of the evidence from the prior proceeding was presented at the March 22 hearing, and no new evidence was taken. The record proper and tapes on appeal, however, include the prior proceedings.

A district court is required to take judicial notice of its prior proceedings in the same cause. *See In re Landers' Estate,* 34 N.M. 431, 283 P. 49 (1929). Notice will uniformly be taken by a court of its own records in the case at bar and of all matters patent on the face of such records, including all prior proceedings. *Baca v. Catron,* 24 N.M. 242, 173 P. 862 (1917). We conclude that the parties' reference to the prior proceedings was a request that the trial court take judicial notice of them and that the court's repeated reference to the earlier proceedings indicates it granted the request. Under these circumstances, those portions of the prior proceedings on which the parties relied in argument before the district judge were relevant in resolving the questions on appeal.

LAW OF THE CASE

The district judge believed that plaintiff's claim was precluded by the law of the case. The doctrine of "law of the case" means that a prior appellate decision is binding. *See Demers v. Gerety,* 92 N.M. 749, 595 P.2d 387 (Ct.App.), *rev'd on other grounds,* 92 N.M. 396, 589 P.2d 180 (1978). Under the doctrine, the law applied on the first appeal of a case is binding on the trial court on remand and on the appellate court if there are further appeals. *See Farmers' State Bank of Texhoma v. Clayton Nat'l Bank,* 31 N.M. 344, 245 P. 543 (1925). It has been said that the doctrine extends not only to questions raised upon the former appeal but also to those that could have been raised. *Id.* The district court viewed this court's decision in *DiMatteo I* as a determination that the claim had been waived. Plaintiff argues that the disability issue was withdrawn in the prior proceeding, and thus it is being presented for the first time in the present proceeding.

In our prior opinion, we noted that Rockwood appeared to contend plaintiff was precluded from an award of medical expenses because there was no evidence or finding of disability. We said that there was no finding because "disability was not at issue ... because of plaintiff's relinquishment of that claim." *DiMatteo I* 104 N.M. at 602, 725 P.2d at 578. We went on to say that an award of medical expenses may be made without a finding as to disability.

The prior appeal did not decide the question of plaintiff's right to disability benefits, nor was such a determination necessarily involved in the appeal. The prior appeal only resolved plaintiff's right to medical benefits.

Defendant has suggested that the district court made a finding of disability at the end of the trial when he found that "[p]laintiff suffered an accidental injury with resulting disability to his lower back while in the course and scope of his employment on February 22, 1973." Since plaintiff had withdrawn his claim for disability benefits, this finding was neither necessary to the prior decision nor a determination of a fact in issue. We also did not decide in *DiMatteo I* that plaintiff had waived his claim to disability. In order to resolve that question, an evidentiary hearing would be required.

In this case, plaintiff's right to disability has never been litigated. Whether he re-

served his claim for subsequent determination is a different issue. We conclude summary judgment cannot be supported on the ground that the law of the case controls. *See Demers v. Gerety.*

RES JUDICATA

■ For res judicata to apply, the traditional rule requires, among other things, that the two causes of action are substantially the same. *Nosker v. Trinity Land Co.*, 107 N.M. 333, 757 P.2d 803 (Ct.App. 1988). If res judicata applies, the first judgment is a conclusive bar upon the parties and their privies as to every issue that either was or properly could have been litigated in the previous case. *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987). If the causes of action are different, res judicata has no application. *See City of Santa Fe v. Velarde*, 90 N.M. 444, 564 P.2d 1326 (1977).

As a result of plaintiff's decision to withdraw his claim for disability benefits, the first lawsuit only determined his right to medical benefits. *See DiMatteo I.* Consequently, the facts necessary for the resolution of the two suits differ, and the issues dispositive in the prior cause are different from those in this one. *See Silva v. State.* The ultimate question, however, is whether the two actions arose out of the same transaction. *See generally* M. Occhialino, *Walden's Civil Procedure in New Mexico*, ch. 12, at 12–30 to –34 (2d ed.1988) (discussing the "transaction" test adopted by *Three Rivers Land Co. v. Maddoux*, 98 N.M. 690, 652 P.2d 240 (1982), *overruled on other grounds, Universal Life Church v. Coxon,* from the *Restatement (Second) of Judgments* ).

When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rule of merger, see *Restatement (Second) of Judgments* § 18 (1982), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transactions, or series of connected transactions, out of which the action arose. *Id.,* § 24. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically. *Id.* This is a rule against "splitting" a cause of action.

While plaintiff's claim for medical benefits in one sense arose out of the same series of transactions as his present claim for disability, we are not persuaded that the general rule against "splitting" a cause of action applies. That is because plaintiff's claim appears to be based on a factual argument that his disability was latent until recently. Under these circumstances, the general rule concerning "splitting" could not be applied without unfairness. *Id.,* comment f.

This court held in *Glover v. Sherman Power Tongs*, 94 N.M. 587, 613 P.2d 729 (Ct.App.1980), that a plaintiff could move for increased benefits as long as a causal connection between the injury and non-disabling pain was determined in the prior proceeding. In *Glover*, the plaintiff had injuries to his head, neck, and upper and lower back, with resulting pain, but the pain was non-disabling. He also had a 25% disability to a scheduled member, for which judgment had been satisfied prior to the time he filed his motion for increase of benefits.

This case is very similar. The prior proceeding determined that plaintiff suffered a compensable injury in 1982, for which medical benefits were due, and it determined that plaintiff suffered pain from the 1982 aggravation of his earlier accidents. *See DiMatteo I.* However, because plaintiff withdrew his claim for disability benefits, none were awarded. Under these circumstances, it is not clear whether plaintiff was entitled to move for increased benefits or should have filed an amended or supplemental complaint. *See Brooks v. Hobbs Mun. Schools*, 101 N.M. 707, 688 P.2d 25 (Ct.App.1984). We need not decide that question at this time. Neither party has raised this issue, and it is not jurisdictional.

In *Glover*, the precise issue on appeal was whether the prior judgment was binding. This court decided it was not. Thus, the prior judgment in this case does not bar plaintiff from seeking to show a latent disability arising out of the same injuries.

Absent the same causes of action, the parties are precluded under the doctrine of collateral estoppel from relitigating only

those ultimate issues and facts shown to have been actually and necessarily determined in the previous litigation. *Silva v. State; City of Santa Fe v. Velarde.* Accordingly, the doctrine of collateral estoppel does not provide support for summary judgment.

## STATUTE OF LIMITATIONS

■ Plaintiff presents alternative arguments. He claims that, since he is alleging his disability did not occur until 1987, the statute of limitations could not begin to run until then. Since the claim was filed in 1987, plaintiff asserts that his claim is timely filed. *See Cordova v. City of Albuquerque,* 71 N.M. 491, 379 P.2d 781 (1962); *Zengerle v. City of Socorro,* 105 N.M. 797, 737 P.2d 1174 (Ct.App.1986). Alternatively, plaintiff asserts that, even if he was partially disabled after the 1982 accidental injury, he continued to receive his full salary and did so in lieu of workers' compensation benefits. *See generally Crane v. San Juan County,* 100 N.M. 600, 673 P.2d 1333 (Ct.App.1983) (payment of full wages in lieu of benefits may result in a credit for the employer). He cites *Rollins v. Albuquerque Public Schools,* 92 N.M. 795, 595 P.2d 765 (Ct.App.1979), for the proposition that, where maximum disability benefits are being paid, it would be premature to file a claim. Thus, argues plaintiff, his employer never failed or refused to make a payment, and regardless of when he knew or should have known of his disability, the statute of limitations did not begin to run until 1987, when he resigned and his salary was terminated.

Defendants rely on the testimony of plaintiff and his treating physician at the 1983 trial in asserting that plaintiff suffered a compensable injury resulting in disability in 1973, and that this fact should have been reasonably apparent to plaintiff as early as 1973. They argue the statute of limitations may not be delayed where a partial disability exists or until a more serious disability is ascertainable. *See ABF Freight Sys. v. Montano,* 99 N.M. 259, 657 P.2d 115 (1982); *Letteau v. Reynolds Elec. & Eng'g Co.,* 60 N.M. 234, 290 P.2d 1072 (1955).

The only specific claim that plaintiff was disabled after recuperation from surgery is

that Dr. Nelson testified about 5% and 10% physical impairments and that he placed some restrictions on plaintiff's movement. Impairment does not necessarily equate with disability, and defendants have not shown how any restrictions affected plaintiff's ability to perform his job.

We agree with plaintiff that the resolution of this issue requires the determination of the factual question of when plaintiff knew or should have known that he was disabled. *See ABF Freight Sys. v. Montano; cf. Romero v. American Furniture Co.,* 86 N.M. 661, 526 P.2d 803 (Ct. App.1974) (claim for scheduled injury properly dismissed where limitation of motion in plaintiff's elbows was known for over two years). Defendants have attempted to make a prima facie case that there is no genuine issue of material fact on this question by relying on evidence from the prior proceeding. *See Goodman v. Brock.* However, the prior evidence supports an inference that plaintiff was not disabled after he recuperated from his injuries. Before the statute of limitations issue can be resolved, findings as to plaintiff's disability and when it arose are necessary. Further, plaintiff's alternative argument raises a factual question of whether he received some of his wages in lieu of disability. We do not reach the merits of either argument.

## CONCLUSION

We conclude that plaintiff's claim for disability benefits was not precluded by *DiMatteo I* on the basis of the law of the case, res judicata, or the doctrine of collateral estoppel, and that plaintiff's response to defendants' defense based on the statute of limitations has raised a genuine issue of material fact. Thus, we reverse the trial court's order from which plaintiff appeals and remand for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

ALARID and CHAVEZ, JJ., concur.