836 P.2d 1249

Roland BLAUWKAMP, Sharon Blauwkamp, Individually and as Next Friend of Bria Blauwkamp, a Minor, Plaintiffs–Appellants,

v.

UNIVERSITY OF NEW MEXICO HOSPITAL, Eilene Lujan, M.D., Dr. John Does 1–3 and the Family Practice Center of the University of New Mexico Hospital, Defendants–Appellees.

No. 11979.

Court of Appeals of New Mexico.

April 28, 1992.

Certiorari Denied June 24, 1992.

Louis Marjon, Clark Varnell, and Nancy L. Garner, Albuquerque, for plaintiffs-appellants.

Carl J. Butkus, Civerolo, Hansen & Wolf, P.A., Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

The previous opinion of the court, filed on March 27, 1992, is withdrawn and the following is substituted.

Plaintiffs appeal from an order granting Defendants' motion for summary judgment and dismissing their complaint alleging medical malpractice. The sole issue on appeal is whether the trial court erred in granting Defendants' motion for summary judgment. We reverse and remand.

FACTS

On May 9, 1988, Plaintiff Sharon Blauwkamp, acting individually and on behalf of her daughter, Bria, filed a complaint alleging negligence on the part of Defendants during her pregnancy and the birth of her minor child on June 24, 1981. Plaintiff alleged the child suffered severe brain damage resulting from Defendants' negligent provision of prenatal care, and their negligent acts and omissions at the time of the child's birth. Thereafter, on November 2, 1988, Plaintiff moved for voluntary dismissal of the complaint, without prejudice, asserting that she desired to obtain co-counsel and she had not yet obtained an expert medical witness to support her malpractice claims. The motion was granted on November 15, 1988. Less than a month later, on December 12, 1988, Shar-

on, joined by her husband, Roland Blauwkamp, filed a new complaint on behalf of themselves, individually, and on behalf of their daughter, against Defendants, setting forth similar claims to those contained in the first action.

On August 11, 1989, Defendants filed a "Motion to Dismiss or, in the Alternative, for Summary Judgment" alleging, among other things, that Plaintiffs' allegations of malpractice could not be supported by expert medical testimony. Defendants' motion was accompanied by several attachments, including a copy of the original complaint, a copy of the transcript of the November 15, 1988 hearing on the motion for voluntary dismissal of their initial complaint, the order of dismissal without prejudice entered in the first lawsuit, and a copy of "Interrogatories #1" served in the second action. The interrogatories sought information regarding the names of any expert witnesses Plaintiffs expected to call at trial, the subject matter upon which the experts would testify, the substance of the facts and opinions to which they would testify, and a summary of the grounds for each opinion. Although Plaintiffs failed to timely respond to the interrogatories, asserting that they were never received, none of the parties have argued on appeal that the basis for the court's order of dismissal was premised on Plaintiffs' failure to comply with discovery.

Defendants' motion for summary judgment was not supported by any affidavits or depositions of medical experts setting forth their opinions negating Plaintiffs' claims of medical malpractice. However, before requesting summary judgment, Defendants answered the complaint, denying both negligence and proximate cause and raising affirmative defenses, including a defense asserting that if Plaintiffs' representations to the court at the time they voluntarily dismissed their initial complaint "have not been complied with, dismissal [of the second suit] should be awarded for failure to comply with [those] conditions."

Plaintiffs responded to the motion and offered affidavits of two physicians, Dr. Stanley M. Warner and Dr. Alexander D. Kovacs. A copy of Dr. Kovacs' notarized affidavit was not filed until October 20, 1989, one day after the trial court mailed a letter to counsel notifying them that Defendants' motion for summary judgment would be granted. The affidavit of Dr. Warner set forth his opinion, stating, among other things, that acts and omissions of Defendants fell below the required standard of medical care.

Dr. Warner's affidavit also recited that the failure of UNM Hospital, through its agents and employees, to perform a timely cesarean section and respond to an emergency situation was a proximate cause of the serious injuries to Bria Blauwkamp. His affidavit further stated that the treatment rendered to Sharon Blauwkamp by the Family Practice Center and Eilene Lujan, M.D., departed from the standard of care in that:

A. According to Dr. Lujan's office notes of the prenatal visits, on July 24, 1981, Sharon Blauwkamp was 2½ to 3 weeks overdue. It is well known in the literature that the placenta can begin deteriorating after term (40 weeks gestation), and that the risk of perinatal and neonatal morbidity increases with the passage of each week past term gestation. It is my opinion that since Sharon Blauwkamp was a high risk pregnancy, she should have had appropriate antenatal testing. Once she had reached term, it is my opinion that her prenatal visits should have increased to at least twice weekly. In addition, more aggressive antenatal monitoring. could have been done besides the non-stress test.

B. It is my opinion that Sharon Blauwkamp was far in excess of her due date, perhaps as much as 4 to 6 weeks overdue and that an obstetrical consultation should have been obtained in the two weeks or so preceding Bria Blauwkamp's birth. It is my opinion that the failure to monitor Sharon Blauwkamp more closely antenatally was a proximate cause of Bria Blauwkamp's serious injuries, and that this failure by the Family Practice Center constituted a departure from the applicable standard of care.

Following a hearing, the trial court granted Defendants' motion for summary judgment, indicating, inter alia, that Dr. Warner's affidavit was insufficient to rebut Defendants' motion for summary judgment and did "not meet the standards of a medical expert as * * * required by New Mexico law."

STANDARD OF REVIEW

■ In reviewing an appeal from an order granting summary judgment, our purpose is not to rule on issues of fact, but to determine if material disputed issues of fact exist. *Pharmaseal Lab., Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977); *Trujillo v. Puro*, 101 N.M. 408, 683 P.2d 963 (Ct. App.1984). In conducting our review we look to "whether defendants made a prima facie case that no genuine issue of material fact existed and, if so, whether plaintiff[s] rebutted the prima facie case." *DiMatteo v. County of Dona Ana*, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct.App.1989).

■ Summary judgment is a drastic remedial tool which demands the exercise of caution in its application. *Eavenson v. Lewis Means, Inc.*, 105 N.M. 161, 730 P.2d 464 (1986); *Pharmaseal Lab., Inc. v. Goffe*. It is not a substitute for trial where material disputed factual issues are shown to exist. *Ponce v. Butts*, 104 N.M. 280, 720 P.2d 315 (Ct.App.1986). Where an appeal is taken from an order granting summary judgment, the reviewing court will assess the record in the light most favorable to support a trial on the merits. *Eavenson v. Lewis Means, Inc.*; *North v. Public Serv. Co.*, 97 N.M. 406, 640 P.2d 512 (Ct.App. 1982).

DID DEFENDANTS MAKE A PRIMA FACIE SHOWING?

■ Plaintiffs argue on appeal that the trial court should not have assessed the sufficiency of their experts' affidavits because Defendants failed to meet their initial burden establishing a prima facie right to summary judgment, and failed to support their motion with documentary or other admissible evidence indicating Plaintiffs' inability to establish the essential elements of their claims.

Defendants' motion for summary judgment was predicated in part on Plaintiffs' statements at the hearing on their motion to voluntarily dismiss their first action, that they did not have an expert witness to corroborate their claim of medical malpractice and needed to obtain additional counsel to assist in prosecuting their claims. Although Defendants filed answers to Plaintiffs' complaint denying any negligence on their part, they did not accompany their motion for summary judgment with an affidavit or other sworn testimony of a medical expert affirmatively stating that Defendants had rendered the required standard of care to the child and her mother or asserting that any injuries suffered by Plaintiffs were not proximately caused by Defendants. On the face of such record, were Defendants required to submit the affidavit of an expert medical witness negating negligence on their part in order to make a prima facie showing of entitlement to relief? In answering this question, we first examine the elements underlying a claim of medical malpractice.

■ In order to prove medical malpractice, a plaintiff has the burden of showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached the duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions· complained of proximately caused the plaintiff's injuries. *See* SCRA 1986, 13–1101 (Repl.1991); *see also Cervantes v. Forbis*, 73 N.M. 445, 389 P.2d 210 (1964); *Schmidt v. St. Joseph's Hosp.*, 105 N.M. 681, 736 P.2d 135 (Ct.App.1987); *Smith v. Klebanoff*, 84 N.M. 50, 499 P.2d 368 (Ct.App.1972).

■ A defendant seeking summary judgment in a medical malpractice action bears the initial burden of negating at least one of the essential elements upon· which the plaintiff's claims are grounded. *Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1, 805 P.2d 589 (1991). We agree with the court below that Defendants satisfied this initial burden.

In order to satisfy the threshold requirement of making a prima facie showing of entitlement to summary judgment, SCRA 1986, 1–056(C) does not require a moving party to support its motion with affidavits of medical experts or other sworn testimony affirmatively disproving Plaintiffs' claims. *See Jacobson v. State Farm Mut. Auto. Ins. Co.*, 81 N.M. 600, 471 P.2d 170 (1970) (motion for summary judgment need not be supported by affidavits); 6 James W. Moore et al., *Moore's Federal Practice* § 56.11 (2d ed. 1991) (Rule 56(c) permits use of admissions of opposing party or other records as basis for motion). Under Rule 1–056, a party may move for summary judgment and is entitled to such disposition "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." R. 1–056(C).

Since Defendants' motion relied principally on Plaintiffs' admissions and statements made to the court at the hearing on their motion to voluntarily dismiss their initial lawsuit, conceding that they had not been able to obtain an expert to support their allegations of medical malpractice, the trial court correctly concluded that Defendants made a prima facie showing of entitlement to summary judgment without the necessity of presenting an affidavit by an expert medical witness. In this case, Defendants' motion for summary judgment relied on the fact that Plaintiffs at an early stage in the proceedings admitted that they lacked an expert witness. Defendants contend that under *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), such a showing is sufficient to support a motion for summary judgment on the basis that "the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331, 106 S.Ct. at 2557. Defendants suggest that New Mexico cases support the same result. *See, e.g., Buchanan v. Downing*, 74 N.M. 423, 394 P.2d 269 (1964).

We agree with Defendants that under *Celotex* their showing was sufficient to make a prima facie case for summary judgment. *See Forbes v. Osteopathic Hosp. of Maine, Inc.*, 552 A.2d 16 (Maine 1988); *see also Ditkof v. Owens–Illinois, Inc.*, 114 F.R.D. 104, 106 (E.D.Mich.1987). We also agree that on these facts *Celotex* and existing New Mexico cases produce the same result.

PLAINTIFFS' RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

Once Defendants made a prima facie showing of entitlement to summary judgment, the burden of proving the existence of genuine material factual issues shifted to Plaintiffs, requiring them to come forward and show by affidavits or other means, admissible evidence indicating material facts tending to establish each required element of their claims. *See Gerety v. Demers*, 92 N.M. 396, 589 P.2d 180 (1978) (to rebut motion for summary judgment, patient has burden of going forward with evidence to show the existence of evidence indicating essential elements of cause of action); *Schmidt v. St. Joseph's Hosp.* (party opposing prima facie showing of entitlement to summary judgment must go forward indicating existence of factual elements comprising the claim); *Lent v. Employment Sec. Comm'n*, 99 N.M. 407, 658 P.2d 1134 (Ct.App.1982) (once movants make a prima facie showing that they were entitled to summary judgment, the party opposing the motion has the burden of showing there was an issue defeating summary judgment); *see also Williams v. Robinson*, 512 So.2d 58 (Ala.1987); *Perez v. Las Vegas Med. Ctr.*

In reviewing Plaintiffs' appeal, we cannot overlook the particular basis of Defendants' motion for summary judgment. We must evaluate the sufficiency of Plaintiffs' response to that motion in light of the missing element on which the motion was premised. *See, e.g., Forbes v. Osteopathic Hosp. of Maine, Inc.* (when hospital moved for summary judgment on the basis that the plaintiff lacked an expert witness but did not support its motion for summary judgment with a showing that the allega-

tions of negligence would require expert testimony, fact question whether hospital's negligence and harmful results were so obvious as to be within common knowledge precluded summary judgment). Here Defendants in effect asked for summary judgment because Plaintiffs lacked an expert witness. The remaining question on appeal is whether Plaintiffs' response to that motion indicated that they had located a qualified expert whose likely testimony at trial supported their allegations. We conclude that their response sufficiently rebutted Defendants' prima facie showing.

In response to Defendants' motion, Plaintiffs relied upon the affidavit of Dr. Stanley Warner, a nonresident physician who was trained in obstetrics and gynecology. In granting Defendants' motion, the trial court rejected Dr. Warner's affidavit on the grounds that it failed to set forth the basis of his familiarity with the requisite standard of care concerning the field of medicine practiced by the Defendant physicians (family practice), failed to adequately set forth the basis of his knowledge of the circumstances giving rise to Defendants' alleged negligence, or to adequately state facts indicating that he practiced in a related field under circumstances similar to those generally followed in this locality.

The duty of care required of a doctor or other health care provider to a patient is set forth in Uniform Jury Instruction 13–1101 and provides that a doctor has the "duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified doctors * * * of the same field of medicine * * * as that of the defendant practicing under similar circumstances, *giving due consideration to the locality involved."* *Id.* (emphasis added); *see also Smith v. Klebanoff.*

Our supreme court reviewed Uniform Jury Instruction 13–1101 in *Pharmaseal,* and rejected the strict-locality rule that requires expert medical malpractice witnesses who practice in the same community as the defendant. The Committee Comment to Uniform Jury Instruction 13–1101 states:

The reference in this instruction to locality is not the adoption of a strict rule requiring that a departure from accepted standards of care necessarily be established by testimony from physicians practicing in the same community as the defendant. The court must only be satisfied that, by education, training and experience, the witness is qualified to testify to the knowledge, skill and care ordinarily used by reasonably well-qualified doctors of the same field of medicine as that of the defendant practicing under similar circumstances, giving due consideration to the locality involved. Then, *how localities differ, such as the lack of facilities, is merely one consideration for the fact-finder.* [Emphasis added.]

■ Plaintiffs were not required to show that Dr. Warner is a specialist in the identical field of practice as each of the Defendant Physicians to withstand Defendants' summary judgment motion. Instead, his expertise in a related medical field goes to the weight, not the admissibility, of his testimony. *Frederick v. Younger Van Lines,* 74 N.M. 320, 393 P.2d 438 (1964) (fact that expert witness was not specialist does not go to admissibility of evidence, nor to its sufficiency, but to the weight it should be accorded); *Sewell v. Wilson,* 97 N.M. 523, 641 P.2d 1070 (Ct.App.1982) (when expert medical testimony is required, fact that witness is not specialist goes to weight, not admissibility, of testimony). The issue of whether a physician has acted negligently is generally a question of fact for the jury. *Cf. Trujillo v. Treat,* 107 N.M. 58, 752 P.2d 250 (Ct.App.1988) (negligence and proximate cause are generally questions of fact for fact finder); *Burgi v. Acid Eng'g, Inc.,* 104 N.M. 557, 724 P.2d 765 (Ct.App.1986) (question of litigant's negligence is ordinarily reserved for trier of fact). Dr. Warner's affidavit recites that he reviewed the records pertaining to prenatal care furnished by Defendants to Sharon Blauwkamp, and the circumstances surrounding Bria's birth. Thus, we focus on the trial court's determination that Dr. Warner's affidavit was insufficient to rebut Defendants' motion for summary judgment because he lacked familiarity with the stan-

dard of medical care ordinarily used by medical practitioners in the locality and his affidavit failed to set forth facts to indicate a basis for his opinion that Defendants acted negligently.

■ In *Pharmaseal* the supreme court has indicated that a physician or surgeon from another locality may be competent to testify regarding the standard of care required of a defendant physician or surgeon practicing in New Mexico. *See Alfonso v. Lund,* 783 F.2d 958, 962 (10th Cir.1986) (construing *Pharmaseal*); *cf. Fabianke v. Weaver,* 527 So.2d 1253, 1257–58 (Ala.1988) (recognizing competency of obstetrician-gynecologist practicing in Philadelphia, Pennsylvania to testify regarding standard of care in calculating delivery date in action brought against general or family physician practicing in Red Bay, Alabama). *Pharmaseal* invests the trial court with broad discretion in determining such an expert's competency. *Cf. Alfonso v. Lund* (decided under Fed.R.Evid. 104(a)). In this case, however, the affidavit of Dr. Warner was sufficient to raise a factual issue concerning his qualifications to testify as an expert or to testify concerning the applicable standard of care. Dr. Warner's affidavit indicated that he received doctoral degrees in both pharmacy and medicine from the University of Southern California; that he completed his externship in obstetrics and gynecology, and served an obstetrical and gynecological residency at Cedars Sinai Medical Center in Los Angeles, California; that he engaged in private practice in California and in Massachusetts in obstetrics and gynecology for approximately twelve years; that he served on the medical faculty at the University of California Medical School at Los Angeles, the New Jersey School of Medicine, and the University of Massachusetts School of Medicine. He was chosen as professor of the year at two different medical schools while serving on the medical faculty in his field of obstetrics and gynecology. His affidavit reflected he had extensive experience in obstetrics and family practice.

Defendants contend that the trial court properly granted the motion for summary judgment, because, among other things, the court found that Dr. Warner was not qualified to testify in opposition to the motion for summary judgment. Defendants assert that the decision as to whether a physician is qualified involves a question of law for the court to decide, as opposed to the weight or credibility of the witness. *See Palmer v. Biloxi Regional Med. Ctr., Inc.,* 564 So.2d 1346 (Miss.1990).

■ Defendants correctly point out that determination of whether a witness is qualified to testify as an expert is entrusted to the discretion of the trial court. *City of Santa Fe v. Gonzales,* 80 N.M. 401, 456 P.2d 875 (1969). Resolution of the witness's qualifications involves determination of whether Dr. Warner's affidavit sufficiently set forth his qualifications to testify as an expert in family practice and obstetrics. We conclude the affidavit was sufficient to establish a prima facie showing of the doctor's qualifications. Whether a witness is qualified to offer expert opinion testimony constitutes a preliminary factual question. *See People v. Williams,* 790 P.2d 796 (Colo.1990) (en banc); *see also* SCRA 1986, 11–104(A). Where the trial court bases its conclusion upon documentary evidence, the reviewing court is not bound by the conclusion of the trial court and may draw its own conclusion from the matters contained therein. *See Verchinski v. Klein,* 105 N.M. 336, 732 P.2d 863 (1987).

■ Examination of the affidavit of Dr. Warner submitted by Plaintiffs in opposition to Defendants' motion indicates it was sufficient to withstand the motion for summary judgment as to each Defendant. The affidavit of Dr. Warner was supplied in response to Defendants' motion for summary judgment, alleging that Plaintiffs lacked expert witnesses. Thus, the issue for the trial court was whether Plaintiffs' allegations of medical malpractice were supportable by expert medical testimony. We agree with Plaintiffs that the affidavit of Dr. Warner sufficiently set forth his qualifications as an expert medical witness, and was sufficient to create jury issues bearing upon Plaintiffs' claims of negligence and proximate cause. Issues involv-

ing the weight to be accorded to the testimony of a witness are not properly resolved by summary judgment. *See Frederick v. Younger Van Lines.* Conflicting evidence, or evidence subject to different reasonable inferences as to whether medical malpractice occurred, constitutes a jury issue. *See Atkins v. Humes,* 110 So.2d 663 (Fla.1959).

Defendants also argue that summary judgment was proper because Dr. Warner's affidavit was conclusionary in nature and failed to adequately explain how he arrived at his opinion determining that Defendants breached their duty of care to Plaintiffs and proximately caused the injuries at issue. *See Trujillo v. Treat* (affidavit of expert filed in response to summary judgment motion must set forth facts admissible in evidence explaining how he arrived at his opinion); R. 1–056(E).

In reviewing the grant of a motion for summary judgment, we resolve all reasonable doubts in favor of the nonmovant. *Pharmaseal Lab., Inc. v. Goffe; Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). While it is true that an expert's purely conclusionary affidavit will be held insufficient to resist a motion for summary judgment, *see Trujillo v. Treat,* scrutiny of the affidavit of Dr. Warner indicates the affiant adequately set forth the basis for his opinions and the affidavit was sufficient to withstand Defendants' motion. The affidavit of Dr. Warner contains his opinion that the care rendered to Plaintiffs Sharon Blauwkamp and Bria by Defendants Lujan, UNM Hospital, and the Family Practice Center fell below the required standard of care, proximately resulting in their injuries.

Dr. Warner's affidavit specifically stated that Sharon Blauwkamp was in a high-risk pregnancy category and that Defendants' failure to monitor her more closely prior to Bria's birth proximately resulted in Bria's injuries. He explains this opinion, observing that "[i]t is well known in the literature that the placenta can begin deteriorating after term (40 weeks gestation), and that the risk of perinatal and neonatal morbidity increases with the passage of each week past term gestation." Dr. Warner's affida-

vit also indicated that the failure to "perform a timely cesarean section is in my opinion a departure from the applicable standard of care" and proximately caused the injuries to Bria. Dr. Warner's affidavit further stated that, in his opinion, Defendant Hospital failed to have adequate or available staff necessary to respond to the obstetrical emergency presented on June 24, 1981, resulting in an unreasonable delay in dealing with a medical crisis.

Defendants point to a claimed omission in Dr. Warner's affidavit, and assert that it fails to set forth an opinion indicating that the alleged negligence of Dr. Lujan proximately caused injury to Bria Blauwkamp. Plaintiffs' complaint alleged that Dr. Lujan was an employee of Defendant Family Practice Center and that the Family Practice Center was part of the UNM Hospital. Defendants' answer denied Plaintiffs' allegation. Their motion for summary judgment, however, did not factually controvert this issue.

Dr. Warner's affidavit recited in part that "the treatment rendered to Sharon Blauwkamp by the Family Practice Center, and Eilene Lujan, M.D., departed from the standard of care"; that Sharon Blauwkamp had a high-risk pregnancy, "she should have had appropriate antenatal testing," and once she rendered term, "more aggressive antenatal monitoring could have been done"; and *"[i]t is my opinion that the failure to monitor Sharon Blauwkamp more closely antenatally was a proximate cause of Bria Blauwkamp's serious injuries, and that this failure by the Family Practice Center constituted a departure from the applicable standard of care."* (Emphasis added.)

Defendants assert the quoted portion of Dr. Warner's opinion, set out above, fails to set forth any opinion that anything done or not done by Dr. Lujan was a proximate cause of Plaintiffs' injuries and that the reference in the affidavit concerning Dr. Warner's opinion as to proximate cause refers to the Family Practice Center, not Dr. Lujan. We think this evidence is susceptible to several different interpretations. First, it can be interpreted as indicating

that the failure to adequately monitor Sharon Blauwkamp was the fault of both Dr. Lujan and the Family Practice Center, and this failure proximately caused the injuries in question. Alternatively, as urged by Defendants, this evidence can be given a narrower interpretation so as to exclude Dr. Lujan.

When the facts before the court are reasonably susceptible to different inferences, summary judgment is improper. *See Koenig v. Perez*, 104 N.M. 664, 726 P.2d 341 (1986) (summary judgment in cases involving issues of negligence is proper only where it is clear that there are no factual issues); *Goodman v. Brock* (party opposing summary judgment entitled to all reasonable doubt); *Trujillo v. Treat* (if equally logical but conflicting inferences can be drawn from matters presented, summary judgment should be denied); *Reynolds v. Swigert*, 102 N.M. 504, 697 P.2d 504 (Ct.App.1984) (where reasonable minds differ on issue of proximate cause summary judgment is improper). In determining whether summary judgment should be granted, the court should view the matters presented in a light most favorable to support the right of trial on the merits. *Cunningham v. Gross*, 102 N.M. 723, 699 P.2d 1075 (1985).

Do the matters related above satisfactorily explain "how and why" Dr. Warner reached his conclusion that Defendants allegedly acted in a negligent manner? We hold that the affidavit of Dr. Warner was sufficient to withstand Defendants' motion for summary judgment and indicated the existence of material issues of fact involving each of Plaintiffs' claims of negligence against the Defendants. *See Pharmaseal Lab., Inc. v. Goffe; see also Sharp v. Kaiser Found. Health Plan of Colo.*, 710 P.2d 1153 (Colo.Ct.App.1985) (where disputed factual issues exist and reasonable minds may reach different conclusions, issue of negligence and proximate cause constitute factual questions for jury), *aff'd*, 741 P.2d 714 (Colo.1987) (en banc).

Defendants further argue that Plaintiffs' docketing statement failed to raise the issue of how and why Plaintiffs' expert witnesses reached their conclusions, and because this appeal was filed prior to July 1, 1990, this court should not address this issue. *See* SCRA 1986, 12–213(A)(3). We disagree with this analysis. Defendants concede that Plaintiffs' docketing statement raised the issue of the sufficiency of their prima facie showing. We think this issue, like the issue of the adequacy of Plaintiffs' response, is a subsidiary issue of Plaintiffs' challenge on appeal of the propriety of the trial court's order granting summary judgment. *Cf. Procunier v. Navarette*, 434 U.S. 555, 559 n. 5, 98 S.Ct. 855, 858 n. 5, 55 L.Ed.2d 24 (1978) (construing a United States Supreme Court rule regarding subsidiary issues essential to and presented by the particular question for which certiorari was granted). We agree with Plaintiffs that the references in their docketing statement to which they cited on appeal were sufficient to preserve the issue under Rule 12–213(A)(3).

CONCLUSION

For the reasons discussed above, we reverse the order granting summary judgment as to each of the Defendants and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID, C.J., and MINZNER, J., concur.